412 So.2d 993 (1982)
STATE of Louisiana
v.
George LAVIGNE and Lawrence Gordon.
No. 81-KA-1085.
Supreme Court of Louisiana.
April 5, 1982.
*994 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, David L'Hoste, John Craft, William R. Campbell, Asst. Dist. Attys., for plaintiff-appellee.
Numa Bertel and Dwight Doskey, Orleans Indigent Defender Bd., New Orleans, for defendants-appellants.
CALOGERO, Justice.
In this appeal from criminal convictions we must decide whether the trial judge committed reversible error when he denied defendants' motions requesting severance for trial of jointly charged defendants. For reasons which follow we determine that he did not err.
By bill of information, the Orleans Parish District Attorney charged defendants George Lavigne and Lawrence Gordon, along with one Ronald J. Veal, with the July 21, 1980, attempted armed robbery and attempted second degree murder of Larry Sanderson in violation of La.R.S. 14:27, La. R.S. 14:64 and La.R.S. 14:30.1. Following trial, the jury found defendants Lavigne and Gordon guilty as charged on both charges. The jury deadlocked as to Veal and the trial judge declared a mistrial. The judge sentenced Lavigne to 30 years at hard labor for each crime, with the sentences to run concurrently. He sentenced Gordon to 20 years at hard labor for each crime, with the sentences to run concurrently. On appeal defendants Lavigne and Gordon each urge one assignment of error, that concerning the failure of the trial judge to grant a severance of trials of the defendants.
The victim of the crimes, one Larry Sanderson, was seated at the bar at Tuckey's Dome at the corner of North Claiborne Avenue and Dumaine Street in New Orleans when the owner Ms. Julia Humble arrived. After observing Lavigne, Gordon and Veal in the establishment, she instructed Lavigne to leave because he was wearing a pair of short pants which was improper attire, and because she had had trouble with him in the past. Lavigne and Gordon left the bar. Sanderson went to the restroom and while he was there, Lavigne re-entered the bar and spoke with Veal. Ms. Humble had her security guard instruct Lavigne to leave, and he did so. Veal also left the bar at this time. When Sanderson returned from the restroom, Ms. Humble cautioned him not to leave the bar because she had overheard Veal and Lavigne making reference to the fact that Sanderson had money.[1] Sanderson ignored the advice and refused to allow Ms. Humble to call a taxi for him, saying that he didn't think that anyone would "do anything" to him. Instead Sanderson decided that he would walk home, and he left the bar.
*995 Lavigne and Gordon jumped Sanderson just after Sanderson went out the door and turned the corner. Sanderson related that Lavigne grabbed him from behind and held down his arms while Gordon put a gun in his face and demanded his money. According to Sanderson, Veal stood a short distance away from the others. Thinking that the gun was a toy, Sanderson told Gordon to "Go ahead and shoot me with that firecracker." Gordon fired a first time, hitting Sanderson in the chin. A second shot, fired a few seconds later, went through Sanderson's side. Sanderson yelled for help and the three defendants began running. Sanderson returned to the bar where someone called for the police and an ambulance.
Joseph Mimette had observed the attack on Sanderson outside Tuckey's. He testified that Lavigne held the victim while someone else had something in the victim's face. A short time later, Mimette, who could then see that Gordon was holding a gun, heard a sound "like the backfire of a car or a shot." Mimette related that the offenders told the victim to leave and that, as Sanderson was walking away, he was shot again. According to Mimette, there was some distance between Veal and the other two throughout the incident.
The police arrived soon thereafter, obtained descriptions of the three offenders and broadcast the descriptions on the police radio. Officer Reynold, on patrol in the area, heard the broadcast and apprehended Gordon. After a brief search of the neighborhood, the police, accompanied by Mimette, located Lavigne and Veal.
Following the close of the state's case, counsel for Veal called Girard Hubbard to testify. Hubbard told the jury that he had been in Tuckey's the night of the shooting. Hubbard said that he had overheard a conversation between Lavigne and Gordon in which Lavigne told Gordon: "Sure, we can do it, man. We can get him. He had on a white shirt with khaki pants and he's a white dude. We can get the white boy."
During the pretrial stage of the prosecution, a single attorney represented both Veal and Lavigne. This attorney filed a motion to be released from his appointment to represent both Veal and Lavigne because he had become aware of an eye-witness who would "be available to the state to testify in an exculpatory manner as to Ronald Veal and in an inculpatory manner as to George Lavigne." The motion named the witness as "Geraud Hubbard," gave his address and stated that the witness' identity had been brought to the attention of the assistant district attorney assigned to the case in an attempt to exculpate Ronald Veal. The trial judge ordered the attorney removed as counsel for Veal and Lavigne.
Approximately a month later, Lavigne's new attorney moved that the trials of the three co-defendants be severed. In the motion, counsel "respectfully represent[ed] that the ends of justice require that the trials of the three defendants herein be severed, in that their defenses are antagonistic, thus prejudicing the defense of Mover." Following a hearing on this and other motions, the trial judge denied the motion to sever. At the hearing, defendants did not put on evidence regarding the antagonistic defenses, nor did they explain why the ends of justice required severance.
At the beginning of the second day of trial and during the state's presentation of its case, Veal's counsel moved for a severance of his client's trial from that of the other two. Counsel said that he anticipated that he might be compelled to call witnesses in defense of Veal who would place that defendant in an "antagonistic position with respect to the co-defendants." Counsel further expressed the opinion that trying Veal along with Lavigne and Gordon would prejudice Veal in the eyes of the jury. The trial judge denied the motion and the trial continued to the conclusion noted above.
Under La.C.Cr.P. art. 842 an objection made when more than one defendant is on trial is presumed to have been made by all defendants "unless the contrary appears." In State v. Bergeron, 371 So.2d 1309 (La.1979), we extended the application of article 842 to written motions made by a co-defendant. Veal's mid-trial motion specifically seeking to sever his trial from that *996 of the other two defendants because his position was antagonistic to theirs, and complaining that he would be prejudiced by the joint trial, is not necessarily the type of motion which accrues to all defendants under article 842 and Bergeron. For all we can discern from the language of the motion alone, Lavigne and Gordon just might at that point in time, mid-trial, have preferred to have their fate go to the jury along with the possibly less culpable Veal. Arguably, "the contrary" i.e., that Lavigne and Gordon have not joined in the motion, does appear. We need not resolve that narrow issue, however, because the Gordon and Lavigne severance contention is presented clearly enough by the pre-trial motion for severance.
That pre-trial motion made by Lavigne's attorney complains of the triple trial, asserting "that the ends of justice require that the trials of the three defendants be severed, in that their defenses are antagonistic, thus prejudicing the defense of the Mover."[2] This motion, made by one defendant, Lavigne, in the joint trial, is presumed to have been made by Gordon also because "the contrary" does not appear. Rather, the defendants had a common interest in the success of the motion. La.C. Cr.P. art. 842; State v. Littleton, 407 So.2d 1208 (La.1981).
La.C.Cr.P. art. 704 directs that jointly charged defendants be tried jointly unless the state elects to try them separately or the court is "satisfied that justice requires a severance."
As we stated in State v. Thibodeaux, 315 So.2d 769, 770 (La.1975):
Neither the present version of the statute nor its predecessor, article 316 of the Code of Criminal Procedure, sets any standards for the exercise of the authority vested in the trial judge to order separate trials of jointly charge defendants when, in his opinion, justice so requires. See La.Code Crim.P. art. 704, comment (c) (1966)
Consequently, through its jurisprudence, this Court has developed the antagonistic defense theory.
Until Thibodeaux, however, it was unclear under the jurisprudence whether an assertion of blame for the crime charged by one defendant against his co-defendant constituted "antagonistic defenses" requiring a severance. Some cases had held that the mere fact that one defendant was seeking to escape by throwing the blame upon the other was not sufficient to require a severance. State v. Williams, 250 La. 64, 193 So.2d 787 (1967); State v. Goury, 184 La. 955, 168 So. 113 (1936); State v. Duplechain, 136 La. 389, 67 So. 175 (1915); State v. Johnson, 116 La. 856, 41 So. 117 (1906). Conversly, the Court in an earlier opinion, State v. Bessa, 115 La. 259, 38 So. 985 (1905), ordered reversal of a conviction of two defendants on the denial by the trial judge of a motion for severance where the defenses were clearly antagonistic in that one or the other of the defendants had committed the crime.
Chief Justice O'Neil in State v. Birbiglia, 149 La. 4, 30, 88 So. 533, 542 (1921), stated that "[t]here is no case more appropriate for the granting of a severance at the instance of one of two or more co-defendants than a case where each defendant attempts to put the blame upon the other."
In Thibodeaux we had before us, pre-trial, a ruling of the district judge refusing to grant a motion for severance. At the hearing on the motion Thibodeaux's counsel revealed that Thibodeaux's defense would be that the contraband seized in the apartment rented by the two co-defendants was in the exclusive possession of the other defendant, Sallettes, and that he, Thibodeaux, had no knowledge of its existence. We stated there that a mere allegation that a co-defendant intends to point an accusatory finger at the defendant is not enough. Nonetheless we held that the defendant before the bar had made a sufficient showing to *997 the trial judge that justice required that the joint charge be severed to allow separate trials for each defendant. We note that the thrust of Thibodeaux's defense, as outlined by his attorney, was directly accusatory of Sallettes and in essence would have required Sallettes to stand trial before two accusers, the state and Thibodeaux.
There followed our decision in State v. McGraw, 366 So.2d 1278 (La.1978). In that case there had been no pre-trial motion to sever and consequently no pre-trial ruling thereon. It was only during the course of the trial that it became apparent that the testimony of co-defendant Manchester was accusatory. She admitted that the murder took place but denied her own complicity in the crime. The trial judge first ruled on the severance motion mid-trial and this Court had its first opportunity to review that ruling after the defendant McGraw was convicted. We held that, even assuming that the defenses were antagonistic, we would not reverse because we reviewed the ruling post-trial and were able to find substantial other evidence of McGraw's guilt. We therefore concluded that his conviction would have been a certainty, independent of the testimony of the co-defendant Manchester.
In the case at hand we are reviewing the ruling on a pre-trial motion for severance. Although the defendants did not seek writs prior to trial, it is incumbent upon us to review the validity of the ruling without regard to whether at trial substantial other evidence was introduced or whether his conviction would have been a certainty irrespective of the joint trial. The Thibodeaux case and its review standard are applicable here.
Nonetheless we find that our pro-defense holding in Thibodeaux is not controlling. The one question for our determination is whether the trial judge abused his discretion when he ruled that justice did not require a severance. This is so because the denial of a motion to sever will not be reversed on appeal unless we find that the trial judge abused his discretion in making the ruling. State v. Whitt, 404 So.2d 254 (La.1981); State v. Singleton, 352 So.2d 191 (La.1977); State v. Jenkins, 340 So.2d 157 (La.1976).
The situation in this case is different from the one in Thibodeaux where Thibodeaux's attorney informed the trial judge pre-trial that Thibodeaux's defense would be to show that he had no knowledge of the existence of drugs in an apartment commonly shared with Sallettes and that the drugs were the sole property of Sallettes. Thibodeaux's assertion was not merely a broad based allegation, but the revelation of a precise, accusatory trial objective. Thibodeaux (through his counsel) was saying that he would place the blame on the co-defendant, Sallettes. In essence, Thibodeaux became a second accuser of his co-defendant.
In the case under review, Lavigne's attorney, pre-trial, merely made the conclusory allegation that "the ends of justice require that the trials of the three defendants herein be severed, in that their defenses are antagonistic..." Admittedly, the trial judge had a little more information on which to base his ruling, for one month earlier he had been told by an earlier attorney that there was a witness, not the defendant Veal, who would testify in an inculpatory manner toward Lavigne and Gordon, and in an exculpatory manner toward Veal.
Even if we consider that assertion about the witness and his testimony as more than a mere allegation, this case still does not present a situation in which defendants necessarily have antagonistic defenses. In Thibodeaux one defendant personally intended to exculpate himself by placing the blame upon another defendant and the trial judge knew of this intended defense. When the trial judge knows that a defendant intends to lay the blame for the offense at the feet of his co-defendant, it is an abuse of discretion not to grant a motion for separate trials for the defendants. In the instant case, the trial judge was only informed that Veal was more likely to be exonerated by the jury than Lavigne or Gordon because a witness would *998 likely inculpate those two defendants while giving more favorable testimony about Veal. Therefore the trial judge did not abuse his discretion in denying the motion.
Incidentally, had the specifics of the anticipated testimony of the witness as it later was given at trial been contained in the motion, we still would likely not find an abuse of discretion on the part of the trial judge. The witness testified that he heard Lavigne and Gordon plotting the robbery of Sanderson. While that is testimony accusatory of those defendants it is not an accusation by a co-defendant of the guilt of the remaining defendants. The fact that at trial it was the co-defendant Veal rather than the district attorney who called the witness does not alter our decision. It was the witness Hubbard, not Veal, who placed blame on Lavigne and Gordon. Furthermore, at the time of the pre-trial ruling the trial judge could not have been certain that the witness, known to the state, would not be called by the state.

Decree
For the foregoing reasons, we conclude that the trial judge did not err in refusing to grant the motion for severance. He did not abuse his large discretion when he determined in advance of trial that justice did not require separate trials of the defendants. Therefore the convictions and sentences of George Lavigne and Lawrence Gordon are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
The defendant has not shown the existence of antagonistic defenses which conflict to the point of being irreconcilable and mutually exclusive. Arguably, even if such a showing had been made, the trial judge's denial of severance should only be reversed on a showing that the defendant suffered "compelling prejudice." See, United States v. Sheikh, 654 F.2d 1057 (5th Cir. 1981); United States v. Horton, 646 F.2d 181 (5th Cir. 1981). I disagree, however, with the implication that an antagonistic defense would require severance only if a co-defendant intends to testify against his fellow defendants.
NOTES
[1] Sanderson had told Veal that he had just returned from a two-week hitch working offshore.
[2] Presumably this motion was based upon the anticipated testimony of the witness found by Veal, although the motion does not so state.