424 So.2d 233 (1982)
STATE of Louisiana
v.
David WEBB and Earl Davis, Jr.
No. 82-KA-0392.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 21, 1983.
*234 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, Richard Thomas, Asst. Dist. Atty., for plaintiff-appellee.
Clyde D. Merritt, Dwight Doskey, Orleans Indigent Defender Program, Roy V. Ladner, Jacob Kansas, New Orleans, for defendant-appellant.
BLANCHE, Justice.
Defendants David Webb and Earl Davis, Jr. were convicted of first degree murder for the killing of Ronald Eledge, a violation of LSA-R.S. 14:30. The following day, the jury of twelve recommended that the defendants be sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendants were then sentenced in accordance with the jury's recommendation. Defendant Webb appeals his conviction and sentence, urging one assignment of error. Defendant Davis also appeals his conviction and sentence, urging twenty-one of the thirty-four assignments of error he filed below. Because we find Webb's sole assignment of error and Davis' assignment of error No. 2 sufficient to warrant reversal of these convictions, we do not discuss all twenty-one assignments urged.

FACTS
On March 18, 1979, John Furtado, Victor Lee, and Ronald Eledge, three transsexuals, were in their French Quarter apartment in New Orleans, Louisiana. As Furtado left the apartment and started out of the complex, he was approached by the two defendants. Webb pointed a gun at Furtado and ordered him to surrender his key. Apparently, Furtado and Webb had met at an earlier date, but Furtado testified that he had never seen Davis before that moment. At gunpoint, Furtado re-entered the apartment. Webb demanded money and drugs from the three, and Lee and Furtado were ordered to disrobe. Webb then tied the hands and feet of the three and gave Davis a knife, instructing him to watch the victims while he searched the apartment for money. There was conflicting testimony from Lee, one of the victims, that Davis had locked the door to the apartment and tied up the three. Lee also claimed that Davis had threatened him with the knife.
Lee attempted to persuade Webb to allow him to call someone to obtain money, but Webb told him to shut up and stabbed him with the knife. Webb continued searching the apartment and ingested some drugs which he found there. Angered that the *235 drugs did not make him high, Webb began strangling Eledge. When Eledge tried to speak, Webb stabbed him repeatedly in the back. He then rose and went to the sink to wash the blood off of his knife. When he returned, Webb noticed that Eledge was still alive. He turned Eledge over onto his back and said, "I'm getting paid for this one," as he plunged the knife into Eledge's neck and chest. When Eledge still refused to expire, Webb told him, "You're a hard one to die." Webb then slit Eledge's throat and stomped on his face with the heel of his shoe. In the meantime, Davis gathered items into a suitcase in preparation for his exit with Webb.
Webb interrogated Furtado concerning names and addresses where he could obtain drugs and stabbed him in the back when he could get no response. Furtado then volunteered some names and addresses. As the defendants prepared to leave, Webb struck Lee and Furtado repeatedly on the head with a heavy champagne bottle, fracturing Furtado's skull and rendering him unconscious. Lee feigned death. After the departure of Webb and Davis, Lee managed to escape through an apartment window and summon help. Furtado and Lee were hospitalized and eventually recovered. Eledge was declared by the medical examiner to have died from multiple stab wounds to the chest and neck.
Approximately four days later, Webb was arrested while hitchhiking near Poydras, Louisiana on suspicion of another murder. Webb confessed to the Eledge killing and showed police where he buried the murder weapon. Davis was arrested a few days later. At trial, Davis' defense was based on his alleged lack of specific intent. Davis claimed to have been afraid of Webb because he was only fifteen years old at the time and Webb was twenty-five, that he did not know what Webb planned to do in the apartment, and that Webb had threatened to harm him and his family if he did not accompany him. Davis also asserted that the inculpatory statement given to the police by Webb exonerated him because in it Webb had expressly told the police that Davis had nothing to do with the killings. Webb's inculpatory statement was not introduced into evidence by the state at trial.
On September 18, 1979, the day of the trial, Webb moved to sever the trials. He was joined in the motion by Davis. In his written motion, Webb urged that the contents of Davis' opening statement would be severely prejudicial to his defense, and that Davis would attempt to bring out his confession, further prejudicing his case. This motion was denied sometime before the trial began. The record does not reflect what evidence was adduced by Webb to establish his allegations of prejudice, nor does it reflect exactly when the motion was denied.[1]
In his opening statement, Davis asserted that he had participated in the crime because he was terrified of Webb, that he knew of other crimes committed by him, and that Webb had confessed to the Eledge murder. Webb again moved for a severance and a mistrial because of the prejudicial nature of the statement. At this point, Davis also re-urged his motion for a severance. All motions were denied. After Davis unsuccessfully attempted to cross-examine a police detective as to the content of Webb's confession, the trial judge offered Davis' counsel a severance, but that offer was rejected with a remark by counsel that he was ready for trial. At that point, Webb again moved for a severance, but the motion was denied.

*236 ASSIGNMENTS OF ERROR NOS. 5, 33 (Webb's assignment No. 1)
By these assignments of error Webb and Davis contend that the trial court erred in failing to grant their motions for severance, and Webb also contends that the trial court erred in failing to grant their motions for severance, and Webb also contends that the trial court erred in failing to grant his motions for mistrial during the state's case in chief. Because we find Webb's conviction reversible on the issue of severance, we do not address his assignment insofar as it concerns the trial court's failure to grant a mistrial.
On May 16, 1979, some four months before trial, defendant Davis filed a motion for severance, alleging that the two defendants had antagonistic defenses. In the motion, Davis noted that the state was in possession of a confession by Webb, but that he would not have the right to cross-examine Webb as to the content of the statement. After a hearing on May 21, 1979, the motion to sever was denied. At the hearing, Davis testified that Webb had forced him to participate in the crime by threatening him and his family. In our opinion, a severance should have been granted on this motion, but the right to appeal its denial inures only to Webb. We are of the opinion that Davis waived his right to appeal the denial of this motion by refusing the severance offered to him later in the trial.[2]
An objection made when more than one defendant is on trial, even a written pre-trial motion for a severance, is presumed to have been made on behalf of all defendants unless the contrary appears true. La.C.Cr.P. art. 842; State v. Lavigne, 412 So.2d 993 (La.1982); State v. Bergeron, 371 So.2d 1309 (La.1979). Although Webb did not join in this motion to sever, the presumption relieves him of the necessity of making an affirmative showing that it was made on his behalf. State v. Henderson, 296 So.2d 805 (La.1974). Therefore, because there has been no showing by the State to the contrary, Davis' pre-trial motion shall be presumed to have been made on behalf of both Webb and Davis.
Jointly indicted defendants are to be tried jointly unless the court is satisfied that justice requires a severance. La.C. Cr.P. art. 704; State v. Tennant, 352 So.2d 629 (La.1977), cert. den., 435 U.S. 945, 98 S.Ct. 1529, 55 L.Ed.2d 543 (1977). The accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Manuel, 408 So.2d 1235 (La.1982); State v. McGraw, 366 So.2d 1278 (La.1978). It is an abuse of discretion not to grant a motion for severance when the trial judge has been made aware that a defendant intends to lay blame for the offense at the feet of a co-defendant. State v. Williams, 416 So.2d 914 (La.1982); State v. Lavigne, supra. Note, however, that antagonistic defenses do not represent the only instances where denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will best be served by a severance, it should be granted. See La.C.Cr.P. art. 704, comments (c), (d); cf. State v. Barkley, 412 So.2d 1380 (La.1982); Wright, Federal Practice & Procedure, Criminal, § 225 (1982); West's Federal Practice Manual, § 6754 (1970).
In the present case, the trial judge, at the hearing on Davis' motion to sever, was presented with evidence that Davis was going to lay blame for the offense at the feet of Webb. On direct examination, the following colloquy occurred:
* * * * * *

*237 "Q: [D]id Mr. David Webb force you to participate in the series of events against your will?
A: Yes, sir. In a way he did.
Q: How did he force you to participate in these incidents?
A: Well, you seeyou know, he pulled the gun on the guy, you know .... I did what he told me to.
Q: Did he threaten you? Did he tell you he was going to kill you or members of your family if you didn't help?
A: He said if I said anything, he would.
Q: Well, is it your testimony that you participated ... in this homicide and robbery against your will?
A: Yeah.
Q: That Mr. David Webb forced you to participate in these incidents...?
A: Yeah. He threatened me.
Q: Did he also threaten members of your family?
A: Yes, sir.
Q: And had David Webb not forced you or intimidated you, ... you would not have participated ...?
A: No. I never did nothing in my life wrong."
* * * * * *
In his reasons for denying the motion to sever, the trial judge stated that he found no antagonistic defenses and intimidated that his denial was based in part on the fact that Webb's statement was exculpatory with regard to Davis. In our opinion, the trial judge erred in finding that the evidence failed to disclose antagonistic defenses and that the fact of the exculpatory nature of Webb's statement somehow justified denial of the motion.
It is obvious from the testimony of Davis that his defense was to place the blame for the crime on Webb. Davis testified that he was afraid of Webb and that Webb had threatened him and his family. Further, in the written motion for severance, Davis specifically noted that Webb had given an inculpatory statement to the police which exculpated him and that he would not be able to cross-examine Webb as to its content if Webb were his co-defendant on trial before the same jury.
In State v. Barkley, supra, we held that a denial of a motion to sever may constitute an abuse of discretion where a defendant establishes that his co-defendant would present exculpatory evidence at a separate trial. In this case, there is no evidence which would indicate that Webb would be willing to voluntarily exculpate Davis at a separate trial. However, we are not willing to limit the scope of Barkley and a defendant's right to obtain a severance to situations where the codefendant will take the stand to willingly exculpate the defendant. A criminal defendant has the right to compel the attendance of witnesses and present a defense. U.S. Const., amendments VI, XIV; La. Const. art. 1, sec. 16; State v. Sylvester, 400 So.2d 640 (La.1981); cf. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. Davis, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). In keeping with his right to present a defense, Davis would have the right to compel the attendance of Webb and other witnesses to examine them as to the content of the exculpatory statement, a right which was limited by the denial of the motion to sever.[3]
Therefore, we find, under the circumstances of this case, that the denial of Davis' motion to sever on May 21, 1979 constituted an abuse of discretion on the part of the trial judge. It was readily apparent from the testimony adduced at *238 the hearing that the thrust of Davis' defense was to be to place blame for the incident at the feet of his co-defendant, Webb. This placed Webb in the position of having to defend against two accusers, the state and Davis. Where the motion is one made pre-trial, we need not consider whether the evidence was so overwhelming that Webb would have been convicted anyway had there been separate trials. It is incumbent on this court to examine the propriety of the trial court's rulings irrespective of whether the conviction of Webb would have been certain at a separate trial. State v. Lavigne, supra, at 997; State v. Thibodeaux, 315 So.2d 769 (La.1975). Further, it should have been apparent from the proceedings that Davis' defense would be curtailed by a joint trial to such a degree that denial of the motion would amount to a deprivation of his constitutional right to put on a defense.[4] In such cases, justice requires a severance. La.C.Cr.P. art. 704; State v. Williams, supra; State v. Lavigne, supra.

ASSIGNMENT OF ERROR NO. 2
By this assignment, defendant Davis urges that the trial court improperly restricted his cross-examination of a police detective regarding Webb's confession. Ordinarily, such an assignment, when taken alone, might be considered harmless error. But given the totality of the circumstances presented in this trial, this assignment represents error of constitutionally significant proportions. Because we find Davis' conviction reversible on the issue of improper denial of his right to cross-examination, we do not address this assignment insofar as it urges ineffective assistance of counsel.
During his cross-examination of Detective Vega, a state witness who was present during the statement given by Webb, Davis attempted to elicit the contents of the confession. The trial judge only allowed Davis to question Vega as to whether or not Webb had made a statement which exculpated Davis.[5] Davis submits that the jury would have given considerable weight to the exculpation because it was in a declaration against Webb's penal interest. Further, Davis asserts that the principal issue was whether or not he had specific intent to kill Ronald Eledge, and without the entire confession in evidence, it was impossible to establish that Webb was aware of Davis' innocence at the time of the offense.
We agree. A criminal defendant has a right to put on a defense. U.S. Const. amendments VI, XIV; La. Const. art. 1, sec. 16; Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Sylvester, 400 So.2d 640 (La.1981). The substance of Webb's statement indicates that the killing was a spur of the moment decision and bolsters Davis' claim that he did not know what Webb planned to do in the apartment. As such, it represented evidence from which the jury could have inferred that Davis had no specific intent.
In the statement, Webb told the police that he had just been walking down the street when he saw Furtado. It was at that *239 moment that he decided to rob them. When asked why he stabbed the three, Webb replied that he did not know, but later asserted that he killed Ronald Eledge because he used to "stare" at him. Webb stated that it first occurred to him to "do something" in the apartment when he realized that no one had seen them enter. He said he disliked Eledge and it just crossed his mind to kill him.
In Chambers v. Mississippi, supra, the defendant was convicted by a Mississippi court for the murder of a policeman and was sentenced to life imprisonment. Another man, McDonald, had confessed to the crime but later repudiated the confession. At trial, Chambers' defense was two-fold. First, he wanted to show that he had not shot the policeman, and second, that another man, McDonald, had confessed to the shooting. However, because of strict application of the state rules of evidence, Chambers was only partially successful in bringing before the jury testimony to support his defense. Under the Mississippi "voucher rule," Chambers was neither able to call McDonald to the stand to cross-examine him as to his confession nor was he able to present witnesses on his own behalf to testify as to the content of McDonald's confession. This was held to be a denial of Chambers' constitutional right to put on a defense. 410 U.S. at 294-303, 93 S.Ct. at 1045-49.
The predicament of Davis in this case is not wholly unlike the predicament of the defendant in Chambers. Davis was restricted in his efforts to put on a defense which would have shown that another man, Webb, had confessed to the crime. It is true that Davis was allowed to examine Vega on the statement, but only to the extent that it exculpated him. That restriction made it difficult for the jury to accord the statement its proper weight. We cannot begin to calculate the effect that full knowledge of Webb's confession would have had on the jury.
Further, the restriction made impeachment of Detective Vega virtually impossible. Vega denied that the statement exculpated Davis. Our review of the record shows that this is simply not true. The relevant excerpts from Webb's confession read as follows:

* * * * * *
"[Q]: ... the person [who] was with you... Do you know this person's name?
WEBB: Ah, the person didn't do anything man ...
[Q]: He didn't do anything as far as what?
WEBB: It's not necessary ... He didn't do anything ... OK?
* * * * * *
He didn't know I was going to do it.
* * * * * *
He didn't know ... I didn't even know... so why should you bother to implement [sic] him?
* * * * * *
[Q]: Can you tell me the name of the subject that was with you?
WEBB: [T]hat person is innocent ... because he's never been in trouble ...
* * * * * *
[Q]: [H]e did not take part with you at any time in any crime?
WEBB: No. The kid never done anything..."
* * * * * *
It is apparent from the record that Webb repeatedly exculpated Davis. However, because the trial judge only allowed Davis to ask Vega whether Webb's statement exculpated him, Davis could not impeach Vega's testimony by reading to him relevant portions of the statement and asking him whether or not he remembered Webb making such exculpatory remarks. He was not allowed to test Vega's recollection, probe into the details of Webb's statement, and "sift his conscience so the jury might judge for itself" whether Vega's testimony was worthy of belief. 410 U.S. at 295, 93 S.Ct. at 1045.
Therefore, we find Chambers v. Mississippi, supra, to be persuasive authority on this point and hold that the restrictions on Davis' *240 cross-examination of Detective Vega as to the content of Webb's inculpatory statement amounted to a denial of Davis' constitutional right to put on a defense. See also La. Const. art. 1, sec. 16; State v. Sylvester, supra.

DECREE
For the foregoing reasons, the convictions of David Webb and Earl Davis, Jr. are reversed, the sentences are vacated, and the case is remanded to the trial court for further proceedings in accordance with the law.
REVERSED AND REMANDED.
LEMMON, J., concurs.
WATSON and CALOGERO, JJ., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I do not consider that the defenses in this case were antagonistic. Defendants were not pointing the finger at each other as to who committed the murder; rather, only the degree of culpability was at issue. Under the circumstances, I do not consider that the ends of justice required a severance. Additionally, I do not find reversible error in the restrictions placed on Davis' cross-examination of Detective Vega as to the content of Webb's inculpatory statement. Accordingly, I respectfully dissent from the reversal of defendants' convictions and sentences.
NOTES
[1] Just before voir dire began, counsel for Webb stated that he would like to "re-urge" his motion for severance. This indicates that the motion was argued and denied sometime before voir dire. As Webb argued his motion for severance following Davis' opening statement, the trial judge noted that the same motion had been argued pre-trial.

Even though the record is bare on this point, it is not difficult for us to speculate that the motion should have been granted, especially when the antagonism became so apparent later during trial. However, due to the incomplete record, we cannot make a proper determination on this matter since we do not know what evidence Webb introduced to support his right to a severance. All this aside, it is immaterial whether the denial was proper or improper since we find this issue dispositive on Davis' pre-trial motion, as discussed, infra.
[2] See State v. Jones, 347 So.2d 200 (La. 1977). To hold otherwise would be to give Davis an unfair advantage. At the point he turned down the offered severance, Davis was obviously willing to take his chances that the jury would acquit him. We cannot countenance rewarding a defendant who turns down requested relief by affording him the opportunity to urge on appeal denial of that very relief earlier in the trial once the jury returns a verdict which is not favorable to him.
[3] Of course, Webb could not be compelled to testify as to the inculpatory nature of the statement. U.S. Const., amendment V; Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); La. Const. art. 1, sec. 16; State v. Wilson, 394 So.2d 254 (La.1981); State v. Johnson, 345 So.2d 14 (La.1977). In Wilson, we noted that a witness may not simply refuse to take the stand. He may assert the privilege only with respect to certain questions. 394 So.2d at 258; see also Roberts v. U.S., supra.
[4] We only so hold on this point as necessary for consideration of whether the trial judge abused his discretion in denying Davis' pre-trial motion to sever since, under the law, the motion inures to Webb's benefit. As we pointed out in n. 2, supra, Davis has waived his right to complain on the issue of severance.
[5] Vega denied that the statement exculpated Davis. The following colloquy occurred between the bench and Davis' counsel:

* * * * * *
BY THE COURT: "... I am [only] going to allow you to question Officer Vega with regard to whether or not they took a statement from Mr. Webb which exculpated Mr. Davis...
BY MR. DUMAINE: Is the court going to restrict my cross-examination?
BY THE COURT: [Yes].
BY MR. DUMAINE: Can I cross-examine the witness with respect to the statement in its entirety?
BY THE COURT: No, sir. You may not.
BY MR. DUMAINE: I'm going to object that, your honor.
* * * * * *
That's the basis of my defense.
* * * * * *
... I can prove from the mouth of the witness... And I don't think the state has the right ... to limit my defense."