457 So.2d 152 (1984)
STATE of Louisiana, Appellee,
v.
Sherman HODGE and Charlie Ray Hodge, Appellants.
Nos. 16452-KW, 16454-KW.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Writ Denied November 9, 1984.
*153 Indigent Defendant Office by William T. Giddens, Shreveport, for defendant-appellant, Charlie Ray Hodge.
Rountree, Hicks & Cox by Dale G. Cox, Shreveport, for defendant-appellant, Sherman Hodge.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., A.M. Stroud, III and John Broadwell, Asst. Dist. Attys., Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
Petitioners, Sherman Hodge and Charlie Ray Hodge, both indigents with different *154 appointed counsel, were jointly charged with second-degree murder, LSA-R.S. 14:30.1, on January 26, 1984, in a single indictment. Each petitioner filed a motion to sever. Sherman Hodge also filed motions for appointment of expert assistance, for a reasonable inquiry by the state into the criminal record and reputation of the deceased, for the criminal records of certain eye witnesses to the crime, and for the state to furnish that information to defendant's counsel. The lower court denied these pre-trial motions. We granted writs to review those rulings and ordered that the matter not be set for trial pending our review. The issues presented for review are: (1) whether the trial court erred in denying the motions to sever; (2) whether the lower court erred in refusing to appoint at state expense expert witnesses in the field of pathology and firearms identification and to appoint an investigator for the indigent Sherman Hodge to enable him to prepare and present his defense; and (3) whether the trial court erred in failing to require the district attorney to make a reasonable inquiry, first, to determine if records exist of arrest and convictions of the deceased and eye witnesses to this crime and second, to determine if the deceased possessed a reputation for violence or other criminal activity in the community in which he lived.
For the reasons expressed, we reverse the lower court's ruling on the motions to sever. Otherwise, we affirm.

FACTS
The facts for the purpose of this review are of necessity gleaned from the statements given by the co-defendants, the autopsy report, the crime lab report, the transcript of the preliminary exam, and the testimony of firearms examiner Steve McKinney. All of the above were introduced into evidence in connection with the hearing on the motions to sever.
On December 21, 1983, the victim, Patrick Paul Carey, knocked on the door of Larry Smith's home where the defendants, Charlie Ray and Sherman Hodge were visiting. Sherman answered the door and went outside with the victim. An argument ensued between Sherman Hodge and the victim, resulting in the victim striking Sherman Hodge. The victim left and Sherman Hodge reentered the house and told his brother, Charlie Ray, that Carey had struck him. Sherman and Charlie Ray left in separate cars and drove to their residence where Charlie Ray went inside and obtained a shotgun. It is disputed whether Sherman was armed at this point. It is also disputed whether he then knew that Charlie Ray had obtained the weapon. Charlie Ray entered Sherman's car and Sherman drove the pair to the intersection of Ford and Dale Streets in Shreveport, Louisiana, where the victim was standing. They stopped the car beside the victim and both defendants got out of the car. Charlie Ray Hodge fired at least one shot with the shotgun; and it is disputed whether Sherman had a gun or fired a shot. The officer who testified at the preliminary examination said there were two witnesses at the scene, both of whom stated that both Charlie Ray and Sherman were armed, Charlie with a shotgun and Sherman with a handgun. After reviewing their statements, however, the officer concluded that one witness evidently did not see Sherman shoot the deceased, and the other was not sure whether Sherman fired a shot.
The victim was struck in the left arm and the head by gun fire and died several hours later. The autopsy report lists the cause of death as trauma due to a gunshot wound to the head. Numerous pellets were recovered from the arm wound by the coroner and submitted to the crime lab along with metal fragments obtained from the scalp and brain as a result of the head wound. Steven McKinney, a firearms expert, testified that the pellets recovered from the victim's arm wound came from a shotgun but that the fragments from the head wound definitely did not come from a shotgun. The head wound, he felt, was caused by a rifle or pistol.
Charlie Ray and Sherman subsequently surrendered to the Shreveport police and *155 each gave statements concerning the incident after being advised of their constitutional rights.
Charlie Ray's statement verified the incident between Sherman and deceased that occurred at Larry Smith's house as reported to him by his brother. He admitted leaving in his car, going to his residence, getting a .12 gauge shotgun from the bedroom, getting in Sherman's car and then, with Sherman driving, proceeding to Ford and Dale Streets where they encountered the victim. Charlie Ray stated that he got out of the car with a shotgun in his hand and shot Carey one time when the victim "went into his pocket," because he thought the victim was reaching for a weapon of some sort. Charlie Ray stated that his brother, Sherman, never had a gun.
Sherman Hodge's statement also was fairly consistent about his prior altercation with the deceased although he said the deceased pulled a knife after striking him from behind. Sherman told his brother Charlie Ray what happened, they left in their individual cars and went to their residence. Sherman stated that Charlie Ray went into the house and that he stayed in the car. He further stated he did not know what Charlie Ray went into the house for and that he thought they were only going to talk to the victim. Sherman stated he did not see the shotgun when Charlie Ray came out of the house and got into the car. Sherman said he had no weapon and only saw the shotgun when Charlie Ray got out of the car and as the victim was walking toward the car. Sherman stated that he also got out of the car and told Carey they wanted to talk to him, that Carey started "pulling out of his pocket" a shiny object, and that Charlie Ray shot the victim one time despite Sherman's protestations that Charlie Ray not do anything but talk to the victim.

ASSIGNMENT OF ERRORS DEALING WITH DENIAL OF THE MOTIONS TO SEVER
Charlie Ray Hodge bases his motion to sever on two grounds. First, he contends a joint trial would violate the rule set forth in Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Under Bruton, a defendant's sixth amendment right of confrontation is violated when an incriminating confession by a non-testifying co-defendant is admitted at trial. Second, Charlie Ray contends that the co-defendants in this case will present antagonistic defenses which will force him to defend not only against the state but also against his co-defendant, Sherman Hodge.
Sherman Hodge contends that the co-defendant's defenses are indeed antagonistic and that because Charlie Ray has given a recorded statement exculpating Sherman Hodge as a perpetrator and inferentially as a principal, he is entitled to compel the attendance of Charlie Ray as a witness at his trial to provide this favorable evidence.
The state made it clear it intends to introduce the co-defendants' statements at trial, claiming that they do not show "antagonistic defenses," but rather support the state's claim that both defendants were principals in the commission of the offense.
The trial court denied the severance motions of both defendants. It concluded that the defenses were not antagonistic, that the statements were "interlocking" in nature and thus an exception to the Bruton rule and that there was evidence from which the state could attempt to show that both defendants were principals. See State v. McSpaddin, 341 So.2d 868 (La. 1977).
We find merit in the antagonistic defenses argument and in the contention that Sherman Hodge is entitled to compel the attendance of Charlie Ray Hodge as a witness at a separate trial to provide exculpatory evidence. We will not, therefore, discuss the Bruton argument.
Jointly indicted defendants are to be tried jointly unless the court is satisfied that justice requires a severance. La.C. Cr.P. Art. 704: State v. Thibodeaux, 315 So.2d 769 (La.1975); State v. Webb, 424 So.2d 233 (La.1982). An accused is not entitled to a severance as a matter of right, *156 but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982). It is an abuse of discretion, however, not to grant a motion for severance when the trial judge has been made aware that a defendant intends to lay blame for the offense at the feet of a co-defendant. State v. Thibodeaux, supra; State v. Lavigne, 412 So.2d 993 (La.1982); State v. Webb, supra. A mere allegation, however, that a co-defendant intends to accuse the other does not automatically mandate severance. Co-defendants seeking severance must present evidence of actual antagonism. State v. Dunbar, 356 So.2d 956 (La.1978). The pre-trial standard for obtaining a severance is broader because before trial there is a degree of speculation as to what the trial evidence will actually be. After trial starts, the standard is stricter because the trial judge is at that time able to analyze the evidence which has actually been admitted. State v. Williams, 355 So.2d 1291 (La.1978). We note, however, that antagonistic defenses do not represent the only instances where denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will best be served by a severance, it should be granted. See La.C.Cr.P. Art. 704, comments (c), (d); State v. Webb, supra. Whether justice requires a severance must be determined by the facts of each case. State v. Turner, 365 So.2d 1352 (La.1978).
Counsel for Charlie Ray Hodge made it clear at the hearing on the severance motion that, based on existing evidence, his client contends his actions were in self-defense and, if not in self-defense, were not the cause of the victim's death. Counsel further contends since Charlie Ray was unaware that Sherman Hodge shot or intended to shoot the deceased, or even was armed, then Charlie Ray cannot be guilty as a principal. Thus, counsel for Charlie Ray Hodge adequately informed the lower court that he intended to lay the blame for this crime solely at the feet of Sherman Hodge.
The evidence relied on is:
1. A showing that only Charlie Ray fired a shotgun at the deceased;
2. Other witnesses who saw Sherman Hodge with a pistol, at least one of whom may have stated he saw Sherman fire that weapon;
3. Charlie Ray's statement that he was unaware that Sherman had a weapon;
4. Sherman's denial of being armed at all;
5. The autoposy report which showed that the victim died as the result of a gunshot wound to the head; and
6. The physical evidence analyzed by the crime lab, which showed that the wound to the deceased's left arm (non-fatal) was the result of pellets from a shotgun and that the gunshot wound to the head (fatal) was not a shotgun wound, but probably came from a rifle or pistol.
Counsel for Charlie Ray Hodge contends that while this evidence possibly shows that his client could be guilty of attempted second degree murder or aggravated battery, as a result of inflicting the non-fatal wound, these verdicts are not responsive to the crime of second degree murder, under La.C.Cr.P. Art. 814. Thus, should the jury believe his theory of defense, it would have to find Charlie Ray Hodge not guilty.
Conversely, Sherman Hodge's counsel argues that Sherman Hodge, in his statement, denies culpability for the crime since he declares that his only intention was to go and talk to the deceased. He claims that he was unarmed and fired no weapon. Sherman further stated that he was unaware that Charlie Ray Hodge possessed a shotgun until Charlie Ray exited the car with the weapon and shot the deceased despite Sherman's protests. Counsel for Sherman Hodge objected to the acceptance by the court of the firearms examiner as an expert and filed a motion to request the court to appoint such an expert to make an independent testing on behalf of Sherman Hodge. This is an attempt to show that the fatal wound was in fact caused by *157 fragments from shotgun pellets. Admittedly, counsel for Sherman Hodge is not as forceful in his contention that Sherman will lay the blame for the crime on Charlie Ray as is counsel for Charlie Ray Hodge. But simple logic makes the reason obvious. Sherman says he was unarmed and fired no weapon and Charlie Ray's statement corroborates this point in Sherman's behalf. Thus, Sherman Hodge wants the opportunity to call Charlie Ray at a separate trial to testify to this exculpatory evidence to contradict the perhaps unclear testimony of the state's eyewitnesses as well as to corroborate his own statement or testimony. A joint trial would certainly defeat Sherman's right to compel Charlie Ray to testify.
Our Supreme Court has stated in the past that where it is clear from the record that a co-defendant would give exculpatory testimony if a severance were granted, the denial of a severance is an abuse of discretion. See La.C.Cr.P. Art. 704, Official Revision Comment (c)(2). The burden, however, was on the movant to establish that the co-defendant would, in fact, testify at a separate trial and to establish the exculpatory nature of his proposed testimony. But even when a co-defendant at a severance hearing had indicated willingness to testify and present exculpatory evidence at a separate trial, a trial judge's denial of a motion to sever on the basis that the co-defendant would in fact be unlikely to testify because his testimony would be highly self-incriminating, has been held not to be an abuse of discretion. See State v. Turner, 365 So.2d 1352 (La.1979); State v. Barkley, 412 So.2d 1380 (La.1982).
However, in the recent case of State v. Webb, 424 So.2d 233, 237 (La.1983), which presents a somewhat analogous situation, our highest court qualified its previous stand and explained the Barkley holding:
In State v. Barkley, supra, we held that a denial of a motion to sever may constitute an abuse of discretion where a defendant establishes that his co-defendant would present exculpatory evidence at a separate trial. In this case, there is no evidence which would indicate that Webb would be willing to voluntarily exculpate Davis at a separate trial. However, we are not willing to limit the scope of Barkley and a defendant's right to obtain a severance to situations where the co-defendant will take the stand to willingly exculpate the defendant. A criminal defendant has the right to compel the attendance of witnesses and present a defense. [Citations omitted.] In keeping with his right to present a defense, Davis would have the right to compel the attendance of Webb and other witnesses to examine them as to the content of the exculpatory statement, a right which was limited by the denial of the motion to sever.3

Therefore, we find, under the circumstances of this case, that the denial of Davis' motion to sever ... constituted an abuse of discretion on the part of the trial judge.[1] [Emphasis added.]
More recently in State v. Prudholm, 446 So.2d 729 (La.1984), the Supreme Court seems at first blush to have reverted to its pre-Webb standard when it declared without reference to Webb that "[t]he bare assertion that a joint trial would deprive defendant of the right to call co-defendants as witnesses is not of itself a sufficient ground to grant a severance." However, we believe that Prudholm is distinguishable from Webb, in that in Prudholm there was no showing at the hearing on the motion to sever that the co-defendant's testimony *158 would have in any manner exculpated defendant.
Because we are reviewing a pre-trial disposition of a motion to sever with its broader standard and because it has been sufficiently shown that the defenses of these co-defendants will be antagonistic, in that each will attempt to place the blame for the victim's death on the other, and because defendant Sherman Hodge, in connection with presenting his defense, has the right to compel the attendance of his co-defendant, Charlie Ray Hodge, to examine him as to the content of the exculpatory statement, we conclude, that under the circumstances of this case justice requires a severance. Therefore the denial of the motions to sever constituted an abuse of discretion on the part of the trial judge.
ASSIGNMENT OF ERROR DEALING WITH THE DENIAL OF THE MOTION FOR APPOINTMENT OF EXPERTS AND AN INVESTIGATOR
Sherman Hodge seeks by these pre-trial motions to have the court appoint an investigator, pathologist and an expert in the field of firearms identification to assist him in preparing his defense. Petitioner is indigent and contends that the assistance of these experts and investigator is crucial to his defense. All requests were denied by the trial court.
Furnishing counsel to the indigent defendant is not enough if counsel cannot secure information upon which to construct a defense. State v. Madison, 345 So.2d 485 (La.1977). The Louisiana Supreme Court has recognized that the state should supply funds upon a showing by the defense that the indigent accused is unable to obtain existing evidence crucial to the accused. State v. Madison, supra; State v. Prestridge, 399 So.2d 564 (La.1981).
The trial judge made factual findings that defendant did not make a sufficient showing of need to justify the procurement of the investigator, pathologist and firearms examiner. We find no abuse of discretion with these findings from our review of the record. State v. Monroe, 397 So.2d 1258 (La.1981). Petitioner failed to adequately show that the state's experts might be erroneous in their opinions or that another expert might necessarily be expected to disagree with their conclusions.
This assignment lacks merit.
ASSIGNMENT OF ERROR DEALING WITH THE DENIAL OF THE MOTION TO REQUIRE THE DISTRICT ATTORNEY TO INQUIRE ABOUT THE EXISTENCE OF "RAP" SHEET AND REPUTATION INFORMATION
Sherman Hodge's final claim is that his rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) were abridged by the trial court's refusal to order the state to make a reasonable investigation to determine whether the victim or eyewitnesses to the crime had criminal records and whether the victim had a reputation for violence in the community and to furnish to petitioner any favorable information as a result of such investigation. By briefing time, respondent conceded that the state had recently provided the victim's "rap sheet" so that particular issue becomes moot.
If the state does not possess or have knowledge of a "rap sheet" on a murder victim, it is not required to make a search for same. State v. Moore, 414 So.2d 340 (La.1982). Further, if the state has conviction records of its witnesses, then it must furnish them to the defense or submit them to the court for determination as to whether the defense is entitled to them. State v. Harvey, 358 So.2d 1224 (La.1978); State v. Washington, 407 So.2d 1138 (La.1982). But if the state does not possess or have knowledge of such records then it is under no obligation to search for them. State v. Washington, supra; State v. Hines, 422 So.2d 1297 (La.App. 4th Cir. 1982).
At the hearing on this motion, the clear indication was that the state had no *159 conviction records on its eyewitnesses even though it questioned whether such information, even if possessed, would be Brady material. Nevertheless the state agreed to turn over any such information to the defense if and when it was obtained. The court and defense counsel accepted this offer in good faith and the only issue before us is whether or not the state is obligated to make a search for such conviction records. We conclude that under the rationale of State v. Washington, supra, the state is under no such obligation. Likewise, we determine that the state is under no obligation to make an investigation as to the victim's reputation for violence in the community in which he lived. State v. Moore, supra.
This assignment of error lacks merit.
The lower court's rulings denying the motions to sever are reversed. The other rulings of the lower court are affirmed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] Footnote 3 indicated in the above quoted portion of the opinion in State v. Webb, supra, reads as follows:

Of course, Webb could not be compelled to testify as to the inculpatory nature of the statement. U.S. Const., amendment V; Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); La. Const. art. 1, sec. 16; State v. Wilson, 394 So.2d 254 (La. 1981); State v. Johnson, 345 So.2d 14 (La. 1977). In Wilson, we noted that a witness may not simply refuse to take the stand. He may assert the privilege only with respect to certain questions. 394 So.2d at 258; see also Roberts v. U.S., supra.