GUIDRY, Judge.
The defendant, Kenneth Durosseau, was charged by grand jury indictment with aggravated rape, a violation of La.R.S. 14:42. At the conclusion of a jury trial, the defendant was convicted of forcible rape, a violation of La.R.S. 14:42.1. After reviewing a presentence investigation report, the trial court sentenced the defendant to 40 years at hard labor, without benefit of probation, parole, or suspension of sentence. From this verdict and sentence, defendant appeals, assigning six errors. Contentions three, four and six were not briefed and are therefore considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4. In addition, the defendant added a contention in brief to this court which was not assigned as error. This issue, alleging an error on the part of the jury in its consideration of an item of physical evidence, will be reviewed in the interest of judicial economy.

*53
FACTS

Just before 9:00 p.m. on April 15, 1991, Basile Police Department Sergeant Nolan Ardoin returned home from a law enforcement training class. At approximately 9:00 p.m., while in his kitchen, Sergeant Ardoin heard noises which he believed were coming from outside his house. He investigated the “cat-like” noises outside. Upon finding no irregularities, he returned inside the house. Shortly thereafter, Ardoin heard a woman screaming, pounding on his door and calling his name. The woman, Ms. Jouanna Nelson, was crying and screaming, and told Ardoin that a black man had broken into her house.
Ardoin called the Basile Police Department, then went outside to search for the intruder. Officer Tony Reed arrived to assist in the search, but the officers failed to locate the suspect. Ardoin returned to his home to speak with Ms. Nelson, who identified Kenneth Durosseau as the person who broke into her house and attacked her. Ba-sile Police Chief Allen Ivory arrived on the scene and was informed by Ms. Nelson’s brother-in-law that the defendant was the attacker. The defendant, who lived at his mother’s residence, is the nephew of Chief Ivory. The Chief and Sergeant Ardoin proceeded to Mrs. Durosseau’s house to question the defendant. Durosseau was not there, but the officers were informed that he might be at Ms. Rose Blunt’s home, which was nearby. The officers proceeded to Ms. Blunt’s residence and knocked on the front door. No one answered and, after several minutes, the defendant’s mother, Ms. Lisa Edwards, and a third woman approached the residence on foot. Ms. Edwards opened the door and yelled inside for the defendant. The defendant came to the door and was taken to the police station for questioning. According to Sergeant Ardoin, the defendant was the only person in Ms. Blunt’s house. The officers then returned to the victim’s residence and assisted in the collection of various items of physical evidence which were submitted to the crime lab for testing. On April 16,1991, the victim positively identified the defendant as her attacker during a photographic lineup. The victim also identified the defendant as the assailant in a later photographic lineup, which, at the defendant’s request, included a picture of Clarence Durosseau, the defendant’s brother. This second lineup was conducted in response to a letter from the defendant in which he alleged that Clarence was the actual culprit and that he was a victim of mistaken identity.
Ms. Nelson also positively identified the defendant as her attacker in court. She stated at trial that, while doing her laundry just before 9:00 p.m., she heard a knock at her front door. Assuming the visitor was her father, she opened the door and, to her surprise, discovered a black male who asked to wash her house. He then forced the door open and attacked her in the living room. According to Ms. Nelson, she tried to resist to the utmost but was unsuccessful in resisting the attacker. He forced her into the bedroom, told her to remove her clothing, then raped her. Ms. Nelson testified that she begged defendant to stop, kept telling him that she did not know him, and even offered him money to cease the attack. Ms. Nelson explained that defendant accepted the latter offer. While looking for her purse in the living room, she ran out the front door, tripped on the steps and fell onto the sidewalk. She screamed for help as the defendant fled the home. Ms. Nelson then ran to Sergeant Ardoin’s home to report the break-in and attack.
Defendant appeals his conviction. In brief, he argues the following three of the six errors assigned:
1. Failing to authorize indigent defense counsel to employ and pay (at state expense) an expert forensic witness with regard to the hair samplings and other samples provided by defendant;
2. Failing to sustain defendant’s objection to the State’s expert witness testimony with regard to the hair samples provided by defendant in light of the court’s denial of defendant’s motion to have an expert appointed for the defendant;
3. Denying defendant’s request to subpoena Germaine Blister.
Additionally, defendant contends the jury erred in failing to properly consider an item of physical evidence presented at trial. He also asks that we review the record for er *54 rors patent. For the following reasons, we affirm.

ASSIGNMENTS OF ERROR NOS. 1 AND 2

By these assignments of error, the defendant contends that the trial court erred in fading to authorize payment for an expert witness to assist the defendant, and in failing to sustain defendant’s objection to the testimony elicited from the State’s expert witness regarding the hair samples seized at the crime scene.
It is incumbent on an indigent defendant to make a sufficient showing of need to justify the procurement of experts at state expense to help prepare the defense. State v. Hodge, 457 So.2d 152 (La.App. 2d Cir. 1984), writ denied, 459 So.2d 545 (La.1984). Specifically, the defendant must show that he is otherwise unable to obtain existing evidence crucial to his defense or that he was prejudiced by his inability to hire an expert. State v. Monroe, 397 So.2d 1258 (La.1981), writ denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411. On review of a denial of such assistance, the question is whether the denial of funds for the purpose of engaging a separate expert has substantially prejudiced the defendant at trial. The defendant must show that the State’s experts might be erroneous in their opinions or that another expert might necessarily be expected to disagree with the conclusions of the State’s experts. State v. Balfa, 506 So.2d 1369 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 436 (La.1987); Hodge, supra.
On October 31, 1991, the defendant filed a motion seeking appointment of experts at the expense of the State to analyze various hair and blood samples which were collected at the crime scene. On November 8, 1991, a contradictory hearing was held on defendant’s motion. The following exchange occurred at the end of the hearing:

BY THE COURT:

Well this is what I believe, I believe that before I can rule on that I would have to have the specific information of, of where do you want to send the samples, who is going to do it, how much it’s going to cost, I mean I can’t give a blanket order, supposing you run up a bill of $50,000.00. So what I am going to do at this time I, I am going to deny your motion, but I am going to preserve you the right to re-urge the motion if you can tell me specifically what test you want to perform, by whom, why and how much they are going to cost.
BY MR. MITCHELL, Counsel for defendant:
Thank you Your Honor that’s sufficient at the present time, that will do.

BY THE COURT:

Now, all right, and then I am going to reconsider it. Now I’m not telling you that I am going to, to rule in your favor, but I’m telling you that I’m going to reconsider it.
BY MR. MITCHELL, Counsel for defendant:
I understand.
The record does not reflect that the defendant ever reurged the matter. The defendant clearly failed to specify what tests he wished run and why he needed these tests for his defense. As noted by the trial court, all of the tests run by the State were inconclusive, with the exception of the examination of hair fibers present on a cap left at the crime scene.
Since the defendant failed to reurge his motion and did not provide the requisite, specific information to the court, and because the defendant failed to show that the additional tests were necessary, or that he was prejudiced by the court’s denial or the court’s request for additional information, the contention is without merit.
Further, defense counsel did not contemporaneously object to the introduction of the State’s hair analysis evidence on the basis that the defendant was not allowed to conduct an independent examination of the samples at the State’s expense. Defendant’s objection to the introduction of this evidence was based on an alleged break in the chain of custody when the samples were being tested by the crime lab.
Accordingly, the contention by the defendant alleging prejudice due to the fact that *55 the State had the opportunity to test the evidence, while the defendant did not have such opportunity, is unrelated to the objection raised at trial. This contention is without merit.

ASSIGNMENT OF ERROR NO. 3

The defendant contends that the trial court erred in denying his request to subpoena a witness. The record does not reflect a denial of any request by defendant for a subpoena.
In brief to this court, the defendant contends that the defendant subpoenaed “Mr. Jermain Blister” as a alibi witness, and that the State knew of “Mr. Blister’s” whereabouts but failed to disclose this information to the defense. Apparently, the person sought to be subpoenaed was Germaine Bris-ter. At defendant’s trial, defense counsel questioned Chief Ivory concerning his attempts to locate “Ms. Germain Brister”, who was allegedly with the defendant at Ms. Rose Blunt’s home at the time the offense was committed. The Chief testified that he attempted to locate this witness, but was unable to do so. The record indicates that Ms. Brister was a transient who defendant had befriended that evening. In closing argument, defense counsel acknowledged Chief Ivory’s attempt to locate Ms. Brister and conceded that she was unavailable to testify because no one connected with the investigation knew her whereabouts.
The record on appeal is devoid of any evidence indicating that the defense sought a subpoena for Ms. Brister, that the court refused such a subpoena, or that the State had any knowledge of Ms. Brister’s whereabouts or concealed such information from the defendant. The defendant has offered nothing in support of this argument. This assignment of error lacks merit.

UNASSIGNED BUT BRIEFED ERROR

Defendant argues that the jury failed to properly consider an item of evidence presented at trial. Although not assigned as error, we will review this issue in the interest of judicial economy.
The defendant contends that “the failure of the jury to acknowledge that a size ten-and-a-half foot could not fit in a size eight shoe was a total disregard of direct circumstantial evidence which indicated that the person who raped the victim in this instance was not the defendant”. This contention • is refuted by the record.
A pair of men’s shoes was collected at the crime scene. At trial, the victim identified the shoes as those worn by her attacker. The shoes taken from the crime scene were “a little bit smaller” than defendant’s usual shoe size. A State witness admitted that the defendant could not wear the shoes “in the right way”. However, the back of one of the shoes seized at the scene was “smashed down” and the State contended that the defendant could have worn the shoes with his heels out, thus smashing down the backs of the shoes. When initially collected, the shoes were wet and pliable, and the back of the non-smashed shoe was “crinkled”, as though it had been smashed. At trial, the State asked that the defendant be ordered to put on the shoes, with his heels out, and demonstrated that the defendant could fit into the shoes in this manner.
The jury had a full opportunity to evaluate the testimony and evidence concerning the shoes seized at the scene, including defendant’s assertion that the shoes were smaller than those normally worn by him. It is clear that the jury did not view the difference in shoe size as evidence which exonerated the defendant.
This court should not second guess the trier of fact with respect to credibility determinations on review. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Decuir, 599 So.2d 358 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1095 (La.1992). Accordingly, this contention is without merit.

ERRORS PATENT

An error patent exists in this case. At sentencing, the trial judge failed to state that the defendant should be given credit for time served. La.C.Cr.P. art. 880; State v. Carr, 618 So.2d 1098 (La.App. 1st Cir.1993). Accordingly, we amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his *56 sentence. See La.C.Cr.P. art. 882(A). Re-sentencing is not required. However, we remand the case and order the trial court to amend the commitment and the minute entry of the sentencing to reflect that the defendant is to be given credit for time served.
For the above and foregoing reasons, we amend the defendant’s sentence to give him credit for time served prior to execution of his sentence and remand to the trial court with instructions that the commitment and minute entry reflect the fact that the defendant be given credit for time served. In all other respects, the defendant’s conviction and the sentence imposed are affirmed.
AFFIRMED AS AMENDED AND REMANDED.