412 So.2d 1380 (1982)
STATE of Louisiana
v.
Travis Eugene BARKLEY and Joey Lum Barnes.
No. 81-KA-2176.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied July 2, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., William G. Yates, Asst. Dist. Atty., for plaintiff-appellee.
Charles Gary Blaize, and Warren J. Daigle, Jr., Houma, of Indigent Defender Bd., for defendants-appellants.
LEMMON, Justice.[*]
Defendants Barkley and Barnes have appealed from convictions of forcible rape and simple rape and sentences at hard labor of 40 and 15 years respectively. The principal issue is whether the trial court erred in denying defendants' motion to sever their trials.[1]

I.
Donna Emmell, the victim, and her boyfriend, Steve Archer, hitchhiked into Houma. *1381 After eating a meal they earned by washing dishes, they walked outside the restaurant and met Barkley, who invited them to smoke marijuana. In the course of conversation while smoking marijuana, Barkley invited them to spend the night at Nolan Naquin's trailer in Chauvin.
The trio then drank several beers at various bars before meeting Naquin and going to the trailer at about 8:30 p. m. Barnes joined them later for seafood and more beer. During the evening the police called at the trailer in response to a complaint about loud stereo music, and after their departure Barkley exhibited a shotgun and proclaimed that he had always wanted to kill a cop.
Several hours later Naquin whispered to Miss Emmell that Barkley and Barnes "want to get over on you" and told her that nothing would happen if she and Archer stayed in the back bedroom. The couple followed Naquin's advice and retired. Barkley burst into the room and took some shotgun shells off the dresser, but left immediately.
A short time later Barkley entered the room again and pointed a shotgun at Miss Emmell, telling her to go into the next room and take her clothes off because "Nolan wants you to give him what he wants". When Miss Emmell went into the next room, Naquin told her to remain there while he talked to Barkley and Barnes, hoping they would fall asleep.
Later Barkley entered the room and told Miss Emmell he was going to blow Archer's head off if she did not go to bed with him. Fearful for Archer's safety, she complied with Barkley's demand. After the act Barkley said "I can't believe I made you do this." Barkley then went to the living room, where Miss Emmell heard him say something about dropping bodies in the bayou.
Barnes then entered the room and told Miss Emmell he wasn't crazy like the others, but was going to force her to have sex anyway. Even more frightened by this time, Miss Emmell again submitted to sexual intercourse. Barnes later said "I hope you can forgive me for this."
Naquin advised Miss Emmell and Archer to leave, and he drove them back to Houma, where Archer called the police. Both defendants were subsequently arrested.

II.
Before trial Barnes filed a motion for severance, asserting that he could not obtain a fair trial if tried jointly with Barkley. He also alleged that he desired to call Barkley to testify on his behalf, but that a joint trial would conflict with Barkley's right against self-incrimination.
On the date scheduled for trial, both defendants argued that their trials should be severed. Barkley argued that his right to compulsory process was being denied, in that he could not call Barnes to testify since Barnes could not be forced to testify at his own trial. Barnes argued similar grounds in support of his motion.
The trial court denied the motion to sever, and the case proceeded to trial. At the end of the evidence, but before closing arguments, defendants reurged their motion to sever. The trial judge conducted a hearing, at which Barkley called Barnes to the witness stand solely for purposes of this motion. Barnes testified: He had heard the testimony presented in court, and he had been apprised of the elements of forcible rape by his attorney. He had not planned to testify in this trial, because the testimony would open him up to cross-examination by the state, but he would take the stand if there was a separate trial. He possessed information favorable to Barkley, specifically that Barkley had never used the alleged shotgun and that he and Barkley both had sexual intercourse with Miss Emmell, with her consent.
When Barnes completed his testimony on the motion, Barkley took the stand and supported Barnes' version of the facts. He also testified that he never saw Barnes with a gun and never saw him threaten Miss Emmell.
Both defendants admitted that they had never told this story before, even though *1382 they had been given ample opportunity to do so. At the conclusion of this evidence, the trial judge once again denied the motions, commenting that the testimony was incredible.
On appeal, defendants contend that the denial of the motion to sever was an abuse of discretion, because of the exculpatory nature of each codefendant's testimony. They contend that the denial of the motion eliminated all possibility of each defendant's calling the only witness who could testify on his behalf and therefore denied each the constitutional right to a fair trial.
C.Cr.P. Art. 704 provides that jointly charged defendants shall be tried jointly, unless the state elects to try them separately or the court, after a contradictory hearing, is satisfied that justice requires a severance. Whether "justice requires a severance" must be determined by the facts of each case. State v. Thibodeaux, 315 So.2d 769 (La.1975). However, the mere allegation that the defenses will be antagonistic is not sufficient to require a severance. State v. Thibodeaux, above.
Here, defendants do not base their arguments on antagonistic defenses. Rather, each claims the other can present exculpatory evidence. Denial of a severance may be an abuse of discretion if the defendant establishes that the co-defendant would testify at a separate trial and would present exculpatory evidence. See State v. Turner, 365 So.2d 1352, 1354 (La.1978), citing C.Cr.P. Art. 704, Official Revision Comment (c)(2); 8 Moore's Federal Practice § 14.04(4) 2d ed. 1981); 1 C. Wright, Federal Practice and Procedure: Criminal § 225 (1965).
In the present case, however, as in Turner, each defendant failed to establish (despite the testimony at the hearing on the motion to sever) the probability that the other would in fact testify at a separate trial and present exculpatory evidence. The proposed testimony by Barnesthat both defendants had consensual intercourse with the victimwould have been a highly self-incriminating statement on Barnes' part at Barkley's trial, and the trial judge properly regarded as highly unlikely Barnes' declaration that he would not invoke his constitutional privilege in a separate trial.
Furthermore, the exculpatory evidence in this case (in which one defendant in order to testify at the trial of the other must place himself at the scene of the alleged crime and must admit several of the elements of the offense charged against him) is vastly different from exculpatory testimony such as, for example, that he and the codefendant were together in Texas at the time of the alleged crime. Denial of the opportunity to call a codefendant as the sole alibi witness may well be sufficiently prejudicial to establish an abuse of discretion in denying a severance of trial. But we cannot say that the trial judge erred in concluding that one defendant would not likely have incriminated himself at a separate trial in order to establish the other's innocence or that the denial of the motion to sever in this case was so prejudicial as to constitute an abuse of discretion.

III
Defendant Barkley contends, by a supplemental pro se assignment, that the trial court erred in imposing a sentence in excess of that discussed in plea bargain negotiations.
There is no record concerning defendant's allegations, which he contends occurred in the trial judge's chambers. Defendant alleges, however, that before the jury was chosen, he rejected an offer to plead guilty to forcible rape and receive a sentence of 15 years; that a second plea bargain of 12 years was offered during the lunch recess on the day of trial; and that after the state rested its case, the judge reasserted his offer of a 12-year sentence. Furthermore, Barkley alleges, codefendant Barnes, throughout these negotiations, was first offered 10 years and then eight years for forcible rape. Both defendants rejected these plea bargain offers and asserted their right to stand trial before the jury.
Defendant Barkley further alleges that his attorney told him that if they did not *1383 take the deal and were convicted, the judge was going to sentence them to the maximum amount of time, but that the defendants still refused to plead guilty. After conviction the trial judge sentenced Barkley to 40 years at hard labor and Barnes to 15 years at hard labor.
Defendant's argument is that the trial judge punished him for standing trial by imposing a greater sentence than was offered in the plea bargain negotiation after the judge had heard all of the evidence. However, the primary sentencing considerations include not only the circumstances of the particular offense, but also the individual circumstances concerning the particular offender.
This offender was a convicted felon with a lengthy criminal record, including convictions or arrests for robbery, battery, forgery, several counts of armed robbery, kidnapping, burglary and contributing to the delinquency of a juvenile. The trial judge considered these factors in sentencing, which perhaps did not become known to him until after the plea bargain offer. Moreover, Barkley does not even contend that the sentence is constitutionally excessive or unjustified in light of his record, and a trial judge's preconviction offer of a lenient sentence should not be viewed as setting a limit for the justifiable sentence after conviction. State v. Frank, 344 So.2d 1039 (La.1977). Finally, the merits of Barkley's contention that he was penalized for exercising his constitutional right to stand trial cannot be determined by direct appeal based on this record, but may be raised by other appropriate procedures.
The convictions and sentence are affirmed.
NOTES
[*] Judge Walter I. Lanier, Jr. of the Court of Appeal, First Circuit and Judges Fred S. Bowes and Nestor L. Currault, Jr. of the 24th Judicial District Court participated in this decision as Associate Justices ad hoc, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] The remaining assignments of error involve only settled principles of law and are treated in an unpublished appendix attached to this opinion.