502 So.2d 599 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jerome TOUSSAINT, Defendant-Appellant.
No. CR86-178.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1987.
*601 Donald Mayeux, Eunice, for defendantappellant.
Morgan Goudeau, Dist. Atty., David Miller, Asst. Dist. Atty., Opelousas, for plaintiff-appellee.
Before FORET, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
Defendants Jerome Toussaint and Timothy Brown were tried jointly and convicted of armed robbery of a Canal Refinery station, a violation of LSA-R.S. 14:64. This appeal concerns Jerome Toussaint only. He was sentenced to ten years at hard labor to be served without benefit of parole, probation, or suspension of sentence.
Toussaint appeals his conviction and sentence based on three assignments of error. He contends first that the trial court erred in denying his motion to sever his trial from that of his co-defendant, Timothy Brown. He next contends that the trial court erred in denying his motion for a new trial based on the grounds that the jury verdict was contrary to the law and evidence, and that he had discovered new evidence in the form of statements exculpating him, statements allegedly made by Timothy Brown in the hearing of three other inmates at the St. Landry Parish jail.
Defendant's last assignment of error is that the trial court's sentence of ten years without benefit of parole, probation, or suspension was cruel and excessive.

FACTS
At about eight o'clock p.m. on Saturday, March 30, 1985, the Canal Refinery Station in Opelousas, Louisiana, was robbed. The assailant entered the store and asked the cashier Janice Guillory for an item behind the register. As the cashier bent down to get the item he pointed a handgun at her and demanded the money in the cash register. Ms. Guillory put $219 from the cash register into a paper bag and handed it to the man, and he took it and ran out of the store. She then called the police.
Later at the police station Ms. Guillory identified the defendant Timothy Brown in a picture line-up as the man who committed the armed robbery. At trial Ms. Guillory identified the clothes Timothy Brown had been wearing when he was arrested on the night of the robbery as the same clothes worn by the man who had robbed the store. She stated that the gun used in the robbery was a small caliber handgun.
At about eight o'clock p.m. on that same evening of March 30, 1985, Andrew Myers, a resident of the city, was in the vicinity of the Canal store and saw two black males running toward a car parked on a side street near a trade school and close to the Canal station. Mr. Myers took down the license plate number because to him the incident looked suspicious. Mr. Myers testified that when the two men got to the car one man ran around to the passenger side and could not get in. The man then ran to the driver's side and both men got into the car on the driver's side and the car left. There was some evidence to indicate that at the location where the car was stopped the curb was so high the door could not be opened against it on the passenger side.
Mr. Myers reported the incident to the police and gave them the license number he had written down. The police traced the license number and discovered that the car was registered to Timothy Brown.
The police located the car at about ten o'clock that night parked outside a trailer home on Pulford Street in Opelousas. The police arrested Brown and Toussaint. At the time of the arrest Toussaint had a .25 caliber handgun and a wallet with money. At the police station Ms. Guillory was shown a physical line-up and identified Brown as the robber.
*602 Vanessa Lafleur lived in the trailer on Pulford Street and she testified that Brown and Toussaint had entered the trailer around 8:30 that evening and flaunted some money.
At trial Toussaint testified that he had nothing to do with the robbery. He claimed that after he, Brown and some other men had finished playing dice and drinking, he, Brown and James Boutte drove around. He testified that he sat in the back seat, extremely intoxicated, and that he dozed on and off as they drove. He claimed that he recalled the car being parked near a trade school and Boutte and Brown running towards the car. Brown had a gun stuck in his belt. They left, Boutte was dropped off, and Brown drove to the trailer. He explained that he had the gun at the time of arrest because during an argument between Brown and his girlfriend, Brown had handed him the gun.
During cross-examination the prosecutor questioned Toussaint about a statement he gave to the police after his arrest. The prosecutor reminded Toussaint that in the statement Toussaint had said "he" jumped in the car and drove off and that "he" helped him out of the car. In response Toussaint claimed that he had been intoxicated and that he had actually meant "they", meaning Boutte and Brown.
James Boutte testified that on the day of the robbery he had gone home at about 7:30 after playing dice with Brown and Toussaint.
Twelve days after the robbery Brown gave a statement saying that on the night of the robbery Toussaint was in Brown's car riding around with him between 7:45 P.M. and the time of their arrest later that night. In his statement he denied any knowledge of an armed robbery. After Toussaint's conviction, Brown's statement was introduced by Toussaint at the hearing on his motion for a new trial.
Brown did not testify at the trial.

ASSIGNMENT OF ERROR NO. 1
Defendant assigns as error the trial court's denial of his motion for a severance.
At the beginning of trial both defendants moved to sever the cases. Defendant argued two grounds in support of his motion to sever. He first argued that Janice Guillory had identified Brown as the lone assailant, and that being tried with Brown would be prejudicial and would result in Toussaint being found guilty by association. We reject this argument out of hand, as the testimony of Guillory helped Toussaint rather than hurt him.
He next argued that since Brown would also be on trial, he could not be subpoenaed as a witness to testify that Toussaint was not involved in the robbery.
Defendants who are indicted jointly are tried jointly unless the court finds that justice requires a severance. La. C.Cr.P. art. 704. Whether justice requires a severance must be determined by the facts of each case. State v. Thibodeaux, 315 So.2d 769 (La.1975). The accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982). At a motion to sever, the burden is on the defendants to satisfy the trial judge that justice requires a severance. Mere allegations will not suffice. State v. Williams, 416 So.2d 914 (La.1982). The same rule applies when a severance is said to be required on the allegation that the defenses are antagonistic; mere allegations do not suffice. State v. Prudholm, 446 So.2d 729 (La.1984). The mover must demonstrate that defenses to be presented will be antagonistic. State v. Turner, 365 So.2d 1352 (La.1978).
No showing of antagonistic defenses was made in our case. Neither defendant tried to blame the other. Each denied any involvement in a robbery. Although Toussaint gave testimony that was inculpatory as to Brown, he also said he knew nothing about Brown committing a robbery. Thus, neither was in a position of having to battle both the state and his co-defendant. Cf. *603 State v. Smith, 470 So.2d 128 (La.App. 4th Cir.1985).
Defendant's main argument is that the trial court's failure to grant separate trials prevented him from calling Brown as a witness to testify as to the statement Brown had made to the police which allegedly exculpated Toussaint. Denial of a severance may be an abuse of discretion if the defendant establishes that the co-defendant would present exculpatory evidence. State v. Turner, supra. State v. Barkley, 412 So.2d 1380 (La.1982).
In Barkley, the two defendants were on trial for rape. Both defendants moved to sever on the ground that each would present exculpatory testimony on behalf of the other at separate trials. The Louisiana Supreme Court in upholding the trial court's refusal to grant a severance observed that:
In the present case ... each defendant failed to establish (despite the testimony at the hearing on the motion to sever) the probability that the other would in fact testify at a separate trial and present exculpatory evidence. The proposed testimony by Barnesthat both defendants had consensual intercourse with the victimwould have been a highly self-incriminating statement on Barnes' part at Barkley's trial, and the trial judge properly regarded as highly unlikely Barnes' declaration that he would not invoke his constitutional privilege in a separate trial.
Furthermore, the exculpatory evidence in this case (in which one defendant in order to testify at the trial of the other must place himself at the scene of the alleged crime and must admit several of the elements of the offense charged against him) is vastly different from exculpatory testimony such as, for example, that he and the codefendant were together in Texas at the time of the alleged crime. Denial of the opportunity to call a codefendant as the sole alibi witness may well be sufficiently prejudicial to establish an abuse of discretion in denying a severance of trial. But we cannot say that the trial judge erred in concluding that one defendant would not likely have incriminated himself at a separate trial in order to establish the other's innocence or that the denial of the motion to sever in this case was so prejudicial as to constitute an abuse of discretion.
In State v. Webb, 424 So.2d 233 (La. 1982), the court added:
In State v. Barkley, supra, we held that a denial of a motion to sever may constitute an abuse of discretion where a defendant establishes that his co-defendant would present exculpatory evidence at a separate trial. In this case, there is no evidence which would indicate that Webb would be willing to voluntarily exculpate Davis at a separate trial. However, we are not willing to limit the scope of Barkley and a defendant's right to obtain a severance to situations where the codefendant will take the stand to willingly exculpate the defendant. A criminal defendant has the right to compel the attendance of witnesses and present a defense. U.S. Const., amendments VI, XIV; La. Const. art. 1, sec. 16; State v. Sylvester, 400 So.2d 640 (La. 1981); cf. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. [State], 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). In keeping with his right to present a defense, Davis would have the right to compel the attendance of Webb and other witnesses to examine them as to the content of the exculpatory statement, a right which was limited by the denial of the motion to sever.3
In footnote 3, the Supreme Court further explained its comments.
3 Of course, Webb could not be compelled to testify as to the inculpatory nature of the statement. U.S. Const., amendment V; Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); La. Const. art. 1, sec. 16; State v. Wilson, 394 So.2d 254 (La.1981); State v. *604 Johnson, 345 So.2d 14 (La.1977). In Wilson, we noted that a witness may not simply refuse to take the stand. He may assert the privilege only with respect to certain questions. 394 So.2d at 258; see also Roberts v. U.S., supra.

The test, then, in the present case is whether Toussaint established that Brown would in fact have testified at a separate trial, and the exculpatory nature of his proposed testimony. State v. Turner, supra.
Had Toussaint's request for a separate trial been granted, Brown could have been compelled to testify at Toussaint's trial. But Brown could have constitutionally refused to answer any question about the statement allegedly exculpating Toussaint because any such question would have involved his activities and whereabouts on the night of the robbery. Brown could not be forced to waive his privilege against self-incrimination and testify on that subject. Toussaint made no showing whatsoever that Brown would have willingly waived his privilege at a separate trial, and it is unreasonable to believe that he would have done so. This was made even more apparent by the fact that on the trial of the case Brown did not testify in his own defense.
Further, if Brown had testified concerning Toussaint's whereabouts at the time of the robbery, and if Brown's testimony had conformed to his statement given shortly after the robbery, he would have put Toussaint where Toussaint said he wasin Brown's car. Since the only eyewitness to the crime, the cashier, put Brown alone in the store, and Brown's statement denied any knowledge of a robbery, Brown's testimony as to Toussaint would have been as much inculpatory as exculpatory. Thus, even if Brown had testified at a separate trial, no prejudice to Toussaint is apparent.
The denial of the motion to sever was not an abuse of discretion. Assignment of error number one lacks merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant argues that the trial court erred in denying his motion for a new trial based on discovery of new evidence not available to him at the time of trial. Defendant alleges that Sandy Bryant, Patrick McNaulty and Glen Bob, three fellow inmates of Brown and Toussaint, had heard Brown state shortly before trial that he had committed the robbery and that Toussaint was not involved.
At the hearing on the motion Patrick McNaulty said that he had overheard Brown in the prison T.V. room telling some other men that Toussaint had nothing to do with the robbery. McNaulty said that he did not tell Toussaint what was said until after trial because he felt it was not his business and he was worrying about his own problems.
Toussaint testified at the hearing that Glen Bob and Sandy Bryant had also approached him and told him that Brown had stated that Toussaint had nothing to do with the robbery.
Introduced at the hearing was a written statement by Brown given twelve days after the robbery in which he appeared to indicate that neither he nor Toussaint had committed the robbery and that they had just driven around that evening. After the above evidence was introduced, the trial judge denied the motion for a new trial.
State v. Hall, 454 So.2d 409 at 412 (La.App. 4th Cir.1984) describes the standard of review of a denial of a motion for new trial as follows:
La.C.Cr.P. art. 851 provides the standard of review for determining whether a trial judge has erred in denying a motion for a new trial. That article provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

*605 The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
La.C.Cr.P. art. 851 contains four generally recognized requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing).
The trial judge's application of these precepts to newly discovered evidence is entitled to great weight, and his denial of a new trial motion will not be disturbed on appeal absent a clear abuse of that discretion State v. Prudholm, 446 So.2d 729 (La.1984); State v. Clayton, 427 So.2d 827 (La.1982) (on rehearing); State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing).... Cumulative evidence as to an issue fairly disclosed and decided at trial ordinarily will not provide a basis for a new trial on the grounds of newly discovered evidence. State v. Lavene, 343 So.2d 185 (La.1977).
In the case at hand the evidence discovered since the trial, would not have been available at the time of trial, and was material to an issue at trial, the defendant's guilt or innocence. It appears, however, that this evidence would probably not have led to an acquittal. The defendant at trial testified that he was not involved in the robbery and was unconscious as Brown and Boutte drove around. Boutte, however, testified that he himself had nothing to do with the robbery. If there is conflicting testimony as to a factual matter, the question of the credibility of the witness is within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610 (La.1981); State v. Cobbs, 350 So.2d 168 (La.1977). It appears that the jury did not find Toussaint's version of the facts credible. The trial judge was also in a position to make a credibility evaluation of Toussaint's cellmate who testified at the motion for a new trial. The testimony by Toussaint's cellmate and Brown's ambiguous statement would not have made Toussaint's testimony more credible and is simply cumulative. We cannot say that the trial court's judgment in denying the motion for a new trial was error. This assignment of error, therefore, lacks merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment of error the defendant argues that the trial court erred in sentencing him to ten years at hard labor without benefit of parole. He claims that the sentence was contrary to the law and evidence and cruel and excessive.
The minimum sentence for armed robbery is imprisonment at hard labor for not less than five years and not more than 99 years without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64.
A sentence, although within the statutory limits, may violate a defendant's constitutional right against excessive punishment under the particular circumstances of the case. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. LaGrange, 471 So.2d 1186 (La.App. 3rd Cir.1985). A punishment is considered constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Davis, 449 So.2d 452 (La. 1984).
In imposing sentence the trial court considered every factor as required by La.C.Cr.P. art. 894.1. A trial judge is *606 given wide discretion in the imposition of sentences within statutory limits; the sentence imposed by the trial court should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Davis, supra. The presentence investigation report reveals that this 24-year-old defendant had no prior felony convictions.
A ten year sentence for a first-time armed robber was not considered excessive in State v. Elloie, 461 So.2d 681 (La.App. 4th Cir.1984). For a crime which requires sentencing in a range of a minimum of five and a maximum of 99 years, this sentence was on the extreme low side. Although this defendant was a first-time offender, a ten-year sentence is not excessive. This assignment of error lacks merit.
The conviction and sentence are affirmed.
AFFIRMED.