762 So.2d 206 (2000)
STATE of Louisiana
v.
Armando BARROSO.
No. 99-KA-1297.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 2000.
*208 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Nancy Miller, Assistant District Attorneys, Gretna, Louisiana, Counsel for appellee State of Louisiana.
Katherine M. Franks, Baton Rouge, Louisiana, Counsel for defendant-appellant.
Court Composed of Judges CHARLES GRISBAUM, Jr., THOMAS F. DALEY and CLARENCE E. McMANUS.
McMANUS, Judge.
Defendant, Armando Barroso, appeals his conviction and sentence of two counts of simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2. For the following reasons, we affirm the conviction and sentence, and remand with instructions.
Defendant was charged on November 25, 1997, with three counts of simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2. Trial was held on November 11, 1998, following which, defendant was found guilty as charged of two counts of simple burglary of an inhabited dwelling by a twelve person jury.
On November 16, 1998, the State filed a multiple bill of information alleging that defendant was a second felony offender. On November 19, 1998, the trial court sentenced the defendant to ten years at hard labor on each count to be served *209 concurrently. On March 3, 1999, the trial court held a multiple bill hearing and subsequently found that the State failed to prove that defendant was a multiple offender. The State filed a second multiple offender bill of information alleging that defendant was a second felony offender. On August 19, 1999, following a hearing, the trial court adjudicated defendant a second felony offender and vacated defendant's prior sentence on count one. The trial court then sentenced defendant to 20 years at hard labor to be served without the benefit of parole, probation or suspension of sentence. The defendant filed a motion to reconsider the sentence, which was subsequently denied by the trial court. On August 25, 1999, defendant filed a timely motion for appeal.

FACTS
At trial, the State presented the testimony of Dwayne Bryant, the groundskeeper for Sawmill Creek Apartments on October 16, 1997. Mr. Bryant testified that at about 1:00 A.M. on October 16, 1997, he noticed two suspicious men, one short and one tall, standing in front of building 16. Mr. Bryant saw the tall man, later identified as defendant's accomplice, Raymond Gil, jump the patio fence of apartment 102 in building 16. Mr. Bryant further testified that the short man, later identified as the defendant, was waiting in the sidewalk area and later entered apartment 102. Defendant and Mr. Gil were in the apartment for about fifteen to twenty minutes. When they exited the apartment, they had a paper bag with them and they were walking to a dark green car. Mr. Bryant saw defendant enter the passenger side of the dark green car. As the defendant and Mr. Gil were leaving the complex, the police officers arrived on the scene.
Mark Jacobs, a former resident at Sawmill Creek Apartments, testified that he lived in building 24, apartment 202, which is on the second floor, right across the alley from building 16, apartment 102. Mr. Jacobs went home for lunch on October 16, 1997, and was at home between 1:00-2:00 P.M. As he was eating his lunch, Mr. Jacobs looked outside his patio window and noticed a short man, Mr. Gil, crossing the alley and walking toward his apartment building. Mr. Jacobs saw Mr. Gil proceed toward the stairs leading to his apartment so he went to his door and looked through the peephole.
Mr. Gil went to Mr. Jacobs's apartment and placed his ear against Mr. Jacobs's door. Mr. Gil then looked underneath Mr. Jacobs's door. Afterwards, Mr. Gil went to Mr. Jacobs's neighbor's apartment and put his ear on his neighbor's door. Mr. Jacobs observed Mr. Gil leave his landing, proceed down the stairs, and cross the alley back to building 16. Mr. Gil looked at the apartment on the ground floor and jumped over the wooden fence. Mr. Jacobs called 911. Mr. Jacobs saw Mr. Gil and defendant carrying items while leaving the breezeway. The two men walked to a parked green car. When he saw the men heading toward the car, Mr. Bryant went down the landing. As the defendant and Mr. Gil left the apartment complex, the police arrived on the scene and Mr. Jacobs pointed to the departing car. Mr. Jacobs identified the defendant after he was apprehended.
Lieutenant Mike Guillory was employed with the Jefferson Parish Sheriff's Office on October 16, 1997. Lt. Guillory testified that he was dispatched to the Sawmill Creek Apartments when he responded to a suspicious person call that two Spanish men were attempting to break into apartments. Lt. Guillory testified that he pulled into Sawmill Road and noticed several people standing outside pointing to a dark green vehicle that was departing. After the green car was pointed out to Lt. Guillory, he radioed other units and advised them that the suspects vehicle had just sped by him. Lt. Guillory then proceeded to give chase and two other police units assisted him. While Lt. Guillory was giving chase, he saw a plastic milk carton discarded from the passenger side of the *210 car. The defendant was apprehended at the end of Hickory Avenue at the dead end by the railroad tracks. Lt. Guillory testified that the officers saw a screwdriver, knives, watches, jewelry, and other items in the vehicle.
Deputy Steven Caravella was employed with the Jefferson Parish Sheriff's Department on October 16, 1997. Deputy Caravella heard a suspicious person dispatch at Sawmill Creek Apartments. Deputy Caravella and his partner, Harold Bourgeois, proceeded to the scene. As Deputy Caravella arrived at the apartment complex, Lt. Guillory got on the radio and informed the other units that the two individuals entered a dark green car and were leaving the complex at a high rate of speed. Deputy Bourgeois gave chase and followed directly after the fleeing vehicle. Deputy Bourgeois turned his overhead lights on and blocked the street, but the dark green vehicle went around his police car. As the deputies gave chase, Deputy Caravella noticed a white object discarded from the driver's side of the vehicle. The chase ended at Hickory Avenue at the dead end by the railroad tracks because the green car got a flat tire after it hit a storm drainage ditch. Inside the car, the deputies found jewelry, two or three pagers, a cell phone, a large screwdriver, and a woman's purse on the floor.
Deputy Michael Cook was employed at the Jefferson Parish Sheriff's Office on October 16, 1997. Deputy Cook was dispatched to the Sawmill Creek Apartments to investigate a burglary call. Upon arriving at the apartment complex, he met with a witness, later identified as Mr. Bryant, who related that he saw two males by the rear yard of the fence line by apartment 102. Deputy Cook found the door of apartment 102 partially ajar. When Deputy Cook entered the residence, it was in complete disarray. Items had been strewn on the floor and areas of the house had been ransacked.
The sliding glass door was ajar and showed signs of pry marks. Deputy Cook found a small dog, whimpering and hiding underneath a futon type couch in the front of the apartment. Deputy Cook remained on the scene until a relative of the occupant came and took custody of the apartment.
Linda Van Arsdall testified that on October 16, 1997, she resided at building 16, apartment 102 of the Sawmill Creek Apartments. She was in New York when the burglary occurred. When she returned to New Orleans on October 17, 1997, she was informed of the burglary. Ms. Arsdall testified that she noticed several items were missing when she returned to her apartment the next day. She testified that she did not know the defendant nor his accomplice. She further testified that she did not give them permission to enter her apartment. The missing items were jewelry and some coins that were in a gallon jug. The jug was later identified by the deputies as the item discarded during the chase.
Detective Richard Shoemaker testified that he was employed with the Jefferson Parish Sheriff's Office on October 16, 1997. He was called out to investigate the burglaries at the Sawmill Creek Apartments. When he arrived on the scene, he noticed that patrol cars had stopped a 1997 Chevrolet Lumina which was occupied by two Spanish men. Deputy Shoemaker examined the interior of the car and noticed the jewelry and clothing scattered about the front and back of the car. The other items located in the car were a toolbox, a small toy safe, beepers, a cell phone, wallet, and a black leather pouch. Detective Shoemaker also testified that there was a bag of jewelry found in Deputy Spera's unit in the back seat where he had placed Mr. Gil for transport to the Eastbank lock-up. The property was later identified as belonging to Ms. Dawn Eastwood, Ms. Linda Van Arsdall, and Ms. Kristy Prait.
Deputy David Spera testified that he was employed with the Jefferson Parish Sheriffs Office on October 16, 1997. Deputy Spera was called out to the scene on *211 Hickory Road where the defendant was apprehended. Deputy Spera took a statement from Mr. Jacobs, who identified both subjects. Deputy Spera transported Mr. Gil to the Eastbank lockup. After Deputy Spera removed Mr. Gil from the back seat of the car, he checked the car and found that there was several items of jewelry in the back seat of his vehicle. Deputy Spera testified that he makes sure that there are no weapons in his back seat before he places a suspect in his car. He further testified that he checks his back seat after he removes a suspect from the car at the lockup.
Ms. Kristy Prait testified that on October 16, 1997, she was living at 2100 Sawmill Road, apartment 101, building 3. Ms. Prait lived at the apartment with her roommate, Anthony Dabdoud. On October 16, 1997, Ms. Prait went to work at about 11:00 A.M. Ms. Prait had locked her front door and sliding door. When she arrived home at 3:00 A.M., she noticed that the front door was unlocked and believed that Mr. Dabdoud left it open. She testified that when she went into the bedroom, she noticed that it was torn apart with clothes and jewelry strewn all over the floor. Ms. Prait further testified that the burglars had sprayed her dog with mace. Ms. Prait called the police from her cell phone. When the police arrived, Ms. Prait had noticed that a few rings and a watch were missing from her jewelry box. Ms. Prait does not know defendant nor Mr. Gil and she did not give them permission to enter her residence or take anything from it.
Anthony Dabdoud testified that on October 16, 1997, he was residing in apartment 101 in building 3 at the Sawmill Creek Apartments. He lived with his fiancé, Ms. Prait. Mr. Dabdoud testified that he learned that his apartment had been broken into when Ms. Prait paged him. Upon receiving that page, he went home. He testified that when he returned to the apartment he noticed marks on the sliding glass door that were not there when he left the apartment earlier. Mr. Dabdoud was taken to the scene at Hickory Avenue where the defendant was apprehended in order to identify some of the items found in the back of the vehicle that the suspects were occupying. He identified his Bulova watch and a few of Ms. Prait's rings. Mr. Dabdoud testified that he does not know defendant nor Mr. Gil. Mr. Dabdoud further testified that he did not give them permission to enter his apartment nor did he give them permission to take his property.
Detective Larry Dyess was employed with the Jefferson Parish Sheriff's Office on October 16, 1997. He further testified that he was involved in an investigation of several burglaries in the River Ridge area. Detective Dyess testified that he responded to the original call regarding the burglaries. While he was on that call, Detective Dyess was assigned to the burglary investigation of Ms. Prait's apartment. When he walked in Ms. Prait's apartment, he noticed an orange stain from a mace container and pepper spray smell. Detective Dyess testified that Ms. Prait's dog had been sprayed with mace. Detective Dyess re-located Ms. Prait and Mr. Dabdoud to the scene where defendant was apprehended on Hickory Road to identify their property.
Gerald Levis testified that he is employed with Enterprise Rent-A-Car (hereafter Enterprise) as a branch rental manager. Mr. Levis testified that Mr. Gil rented a 1997 green Chevrolet Lumina on October 16, 1997 at 8:45 A.M. When Mr. Gil rented the vehicle, the car's interior was in pristine condition and there were no items in the car. The Jefferson Parish Sheriff's Department called Enterprise and informed Enterprise that the car had been used in a burglary at about 5:00 P.M. on that day. Enterprise personnel went and picked up the vehicle that was abandoned at Hickory Avenue. Mr. Levis testified that the car stopped at Hickory Avenue was the same car that was rented to Mr. Gil that morning. Mr. Levis further *212 testified that Armando Barroso's name did not appear on the rental agreement for the car.
Ms. Phyliss Leblanc, property manager at Willow Creek Apartments, testified that on October 16, 1997, apartment B -111 was rented to Ms. Dawn Eastwood. Ms. Leblanc further testified that Ms. Eastwood gave notice to vacate the apartment on November 9, 1997 and her lease ended on November 30, 1997. Deputy Phillip Desalvo testified that, on October 16, 1997, he investigated burglaries in the River Ridge area. Deputy Desalvo testified that he was dispatched to the Willow Creek Apartments and met with Ms. Eastwood. He noticed fingerprints near the handle of the sliding glass door and a pry mark on the sliding glass door. Deputy Desalvo took a property list from Ms. Eastwood on the missing items. He testified that several rings, necklaces, earrings, and a tool box were missing.
After the State rested, defendant took the stand. The trial court informed defendant of the rights that he was waiving by testifying. Defendant's interpreter testified for him in English. Defendant testified that on the morning of October 16, 1997, he went to work at around 11:00 A.M. at California Custom on Airline Avenue. Defendant's car broke down after work so he called Mr. Gil to assist him between 12:00 P.M. and 12:30 P.M. Defendant testified that Mr. Gil told defendant that he had to go to the apartment complexes to inquire about a job.
After some time, defendant became tired of waiting in the vehicle and went outside. When Mr. Gil left the building, he had a package. Defendant held the package while Mr. Gil fixed his pants. Defendant further testified that he did not enter any of the apartments nor did he take anything from those apartments. When they left the apartments, Mr. Gil saw the police and became very nervous suddenly. Defendant wanted to stop for the police, but Mr. Gil refused. Defendant testified that he realized that Mr. Gil had been burglarizing apartments when the police apprehended them and started to ask questions about the apartments that had been burglarized.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant argues that the evidence was insufficient to support a verdict of simple burglary of an inhabited dwelling in count two, the burglary of Ms. Prait's and Mr. Dabdoud's apartment, because the element of entry was not established. The State responds that the evidence is sufficient to establish that defendant was guilty of simple burglary of an inhabited dwelling.
The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 318-320, 99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 318-320, 99 S.Ct. at 2788-2790; State v. Rosiere, 488 So.2d 965, 968 (La.1986). Under Jackson, the standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 318-320, 99 S.Ct. at 2788-2790; State v. Rosiere, 488 So.2d at 968; State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 816, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
The defendant was charged with simple burglary of an inhabited dwelling, a violation of LSA-R.S. 14:62.2, which provides:
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other *213 structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60.
The evidence presented in this case was circumstantial. The statutory rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. This statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard to be applied in determining the sufficiency of evidence to sustain a conviction. State v. Evans, 97-1030 (La.App. 5 Cir. 4/15/98), 712 So.2d 941, 945, writ denied, 98-2088 (La.12/18/98), 731 So.2d 276. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Defendant argues that the evidence produced at trial does not support a finding that he committed simple burglary of an inhabited dwelling with respect to apartment 101. Defendant argues that his conviction is solely based on the presence of Ms. Prait's and Mr. Dabdoud's property in the car that defendant was occupied when he was apprehended.
In order to convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) defendant had the specific intent to commit a felony or theft inside the structure. State v. Myers, 98-899 (La.App. 5 Cir. 5/19/99), 737 So.2d 255, 260, writs denied, 99-1803 (La.11/24/99), 749 So.2d 685 and 99-1770 (La.11/24/99), 750 So.2d 979. Mere possession of property recently stolen in a burglary does not create the presumption that the defendant committed the offense. State v. Ewens, 98-1096 (La. App. 5 Cir. 3/30/99), 735 So.2d 89, 93, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. There is no indication, however, that the jury relied on the presumption that defendant committed the offense.
In the present case at bar, the jury heard testimony from Mr. Jacobs that placed defendant at the Sawmill Creek Apartments between the hours of 12:00 P.M. and 1:00 P.M. Specifically, Mr. Jacobs testified that he saw both defendant and Mr. Gil walk near the area of apartment 101, building 16 from between 12:00 P.M. and 1:00 P.M. Both apartment 101, building 16 in Sawmill Creek Apartments and apartment 101, building 3 in Willow Creek Apartments were burglarized on the same day, both complexes are in the same area and entry was made in both apartments by prying open the sliding glass door. Moreover, Ms. Prait's and Mr. Dabdoud's property was found inside of the car that both Mr. Gil and defendant were occupying when the police officers apprehended them. The jury obviously did not find defendant's testimony credible. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness and the credibility of witnesses will not be reweighed on appeal. State v. Zeno, 610 So.2d 268, 270 (La.App. 5 Cir.1992). Viewing the foregoing evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of two counts of simple burglary of an inhabited dwelling.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant argues that the trial court acted vindictively in imposing a sentence that amounted to 10 years on each count to be served concurrently because defendant was offered a plea bargain for a total of five years and no multiple bill of information would have been filed. Defendant *214 further argues that the sentence should be set aside as excessive because the sentencing judge failed to articulate sufficient reasons to justify the sentence on the multiple bill and he did not order a presentence investigation.
The State responds that the original sentence in count one and the enhanced sentence as a multiple offender on count one were not excessive, but they were in fact below the statutory maximum sentence, indicating that the trial court weighed the individual factors concerning this particular defendant. The State further responds that the sentence was not imposed to punish the defendant for exercising his right to trial.
In State v. Nguyen, 95-1055 (La. App. 5 Cir. 3/26/96), 672 So.2d 988, 994, writs denied, 96-1019 (La.10/4/96), 679 So.2d 1377 and 96-2087 (La.10/7/96), 680 So.2d 639, this Court noted that the Federal Fifth Circuit Court of Appeals, in Frank v. Blackburn, 646 F.2d 873 (5th Cir.1980), rehearing granted in part, 646 F.2d 902 (5th Cir.1981), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981), acknowledged that a defendant cannot be punished simply for exercising his constitutional right to stand trial. However, the mere imposition of a longer sentence than the defendant would have received had he pled guilty does not automatically constitute such punishment. Id.
Additionally, a trial judge's pre-conviction offer of a lenient sentence should not be viewed as setting a limit for the justifiable sentence following conviction. State v. Barkley, 412 So.2d 1380, 1383 (La.1982).
In State v. Nguyen, this Court quoted United States v. Derrick, 519 F.2d 1, 4 (6th Cir.1975), as follows:
Another factor which we see as almost inevitably influencing the decision of a trial judge is that in a plea of guilty, the crime pleaded is understood only as related in somewhat sterile fashion through the plea taking process or through a printed narration in the presentence report. The sentencing following a trial upon the merits, on the other hand, sees the trial judge in possession not only of more of the detailed facts of the offense itself, but of the flavor of the event and the impact upon any victims. It is for that reason a more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice, and almost inevitably this added knowledge will affect the judge's consideration of what penalty appears most appropriate. This can, of course, work to the benefit or the detriment of the defendant according to the degree of culpability shown by the proofs.
State v. Nguyen, 672 So.2d at 994-995.
In imposing the original sentence, the trial court stated that a lesser sentence would deprecate the seriousness of the crime that was committed because the offense involved several victims. The trial court noted that the defendant could receive a maximum sentence of 24 years, or 12 years for each count. The trial court also noted that the defendant has already received an eight year sentence on his prior conviction for manslaughter and attempted first degree murder of a police officer in 1984. The trial court thus sentenced the defendant to ten years on each count to be served concurrently.
It is apparent that the trial court had more evidence before the defendant's trial than it did when the plea was offered; therefore, the trial court did not impose its sentence to punish the defendant for exercising his right to trial. In re-sentencing the defendant to 20 years at hard labor on count one after adjudicating the defendant as a second felony offender, the trial court noted that the defendant's prior convictions were for crimes of violence. The trial court also noted that the inordinate period of time that it took to complete the sentence as to the manslaughter plea indicates that defendant is not susceptible to the kind of rehabilitation that the court *215 might have otherwise imposed. Further, the trial court found that defendant's record is indicative of resistance to authority.
Defendant also argues that the sentence is excessive. The Eighth Amendment to the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the crime. State v. Bonanno, 384 So.2d 355, 358 (La.1980); State v. Robertson, 97-1040 (La.App. 4 Cir. 11/19/97), 702 So.2d 1207, 1208. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Baxley, 94-2982 (La.5/22/95), 656 So.2d 973, 979. A maximum sentence under the habitual offender law is reserved for the worst offender. State v. Telsee, 425 So.2d 1251, 1253 (La. 1983).
It is well settled that a sentence should not be set aside absent manifest abuse of discretion. State v. Anseman, 607 So.2d 665, 674 (La.App. 5 Cir. 1992), writs denied, 613 So.2d 989 (La. 1993) and 613 So.2d 990 (La.1993). In reviewing claims of an excessive sentence, an appellate court uses a two-step process. First, the record must show adequate consideration of the criteria set forth in LSA-C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688, 698-699 (La.1983). The trial court is not required to list every aggravating and mitigating circumstance so long as the record reflects adequate consideration of the guidelines of LSA-C.Cr.P. art. 894.1. State v. Smith, 433 So.2d at 698-699; State v. Gene, 587 So.2d 18, 24-25 (La.App. 2 Cir.1991), writ denied, 604 So.2d 993 (La.1992). Remand is unnecessary when a sufficient factual basis for the sentence is shown in the record. State v. Lanclos, 419 So.2d 475, 478 (La. 1982).
In the present case, defendant was convicted of simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2, which has the following penalty provision:
Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.
Defendant was adjudicated a second felony offender and sentenced to twenty years at hard labor. Under Louisiana's Habitual Offender Law, the sentencing range for a second offender is a minimum term of one-half and not more than twice the maximum term prescribed for the first conviction. LSA-R.S. 15:529.1 (A)(1)(a). As a result of being adjudicated a second offender, defendant faced a sentencing range of six to twenty-four years. The trial court articulated the reasons for imposing defendant's sentence, and it is clear that the trial court considered the unique individual circumstances of this defendant because the trial court sentenced defendant to a term in the statutory range.

ASSIGNMENT OF ERROR NO. 3
The defendant argues that the minute entry does not agree with the transcript and serves to make the sentence excessive because the commitment states that the sentence was imposed without the benefit of parole. The State responds that the sentence is illegally lenient because the trial court did not sentence the defendant to imprisonment without the benefits of probation or suspension of sentence. The State also requests that the minute entry be corrected.
The transcript reflects that the trial court did not impose defendant's enhanced sentence be served without the benefit of parole, probation or suspension of sentence. Although the State notes this error in its brief, it did not preserve its right to *216 appeal the sentence, since it did not file a motion to reconsider sentence, or make a timely objection below. LSA-C.Cr.P. art. 881.2 B provides:
The State may appeal or seek review of a sentence:
(1) if the sentence imposed was not in conformity with:
(a) mandatory requirements of the statute under which the defendant was convicted, or any other applicable mandatory sentence provision; or
(b) the applicable enhancement provisions under the Habitual Offender Law, R.S. 15:529.1; and
(2) if the State objected at the time the sentence was imposed or made or filed a motion to reconsider sentence under this Article.
LSA-C.Cr.P. art. 881.1 D provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
It also is well settled that appellate courts are prohibited from acting to correct illegally lenient sentences where the prosecution has failed to preserve the issue for appeal. State v. Harrell, 98-671 (La.App. 5 Cir. 1/26/99), 727 So.2d 1231, 1236. Based on the foregoing, this Court may not act on defendant's illegal sentence. Id.
We note that the law in this area changed on August 15, 1999, when LSA-R.S. 15:301.1 became effective to permit a court to amend an illegally lenient sentence even if the district attorney did not file a Motion to Reconsider and subsequently raise the issue on appeal. See 1999 La. Acts, No. 94. In the preamble, the legislature stated that it enacted LSA-R.S. 301.1 in order to "provide time limitations for amending sentences; to provide for amendment of criminal sentences not in conformity with criminal statutes upon the court's own motion or motion of the district attorney; and to provide for related matters." LSA-R.S. 301.1 provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of *217 the initial sentencing. (Emphasis Added).
In this case, defendant was sentenced in August 19, 1999, on the multiple bill. The one hundred eighty day time limitation set by the legislature to amend the sentence has already elapsed; therefore, the illegally lenient sentence cannot be acted upon.
The commitment reflects that the defendant's sentence is to be served without the benefits of parole, probation, or suspension of sentence.[1] However, the transcript reflects that the trial court did not impose defendant's sentence to be served without benefits. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La. 1983). Therefore, this matter is remanded and the trial court is ordered to amend the commitment to conform with the sentencing transcript.
The defendant also argues that the trial court failed to inform him of the prescriptive period for post-conviction relief as mandated by LSA-C.Cr.P. art. 930.8. LSA-C.Cr.P. art. 930.8 provides, in pertinent part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
* * *
* * *
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
The application of the amended prescriptive period in defendant's case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment. See State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, 1201. Therefore, we hereby order the district court to send written notice of the amended prescriptive period (along with an advisal of when the period begins to run) to defendant within ten days of the rendering of this opinion, then to file written proof in the record that defendant received said notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.

ERRORS PATENT DISCUSSION
The record in this case was reviewed for errors patents in accordance with LSA C.Cr.P. art. 920 and State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). There were no other errors patent.
Accordingly, we hereby affirm defendant's conviction and sentence. We remand and order the trial court to amend the commitment and minute entry of the habitual offender hearing to conform to the transcript. We further order the trial court to send written notice of the prescriptive period for post-conviction relief to defendant within ten days of the rendering of this Court's opinion, in accordance with LSAC.Cr.P. art. 930.8, and to file written proof in the record that defendant received such notice.
CONVICTION AND SENTENCE AFFIRMED, CASE REMANDED WITH *218 INSTRUCTIONS FOR LIMITED AND SPECIFIED PURPOSES.
NOTES
[1] LSA-R.S. 15:529.1(G) provides that all defendant's habitual offender sentence be served without the benefit of probation or suspension of sentence. However, the habitual offender statute is silent as to the benefit of parole for second offenders. LSA-R.S. 14:62.2 requires the first year of the sentence is to be served without benefit of parole. Therefore, defendant would not be eligible for parole for one year. See State v. Strickland, 97-1265 (La. App. 5 Cir. 7/28/98), 716 So.2d 457, 458.